THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
JAMES BARTON, Defendant-Appellee.

Fifth District   No. 83—386

Opinion filed March 1, 1984.—Rehearing denied April 5, 1984.

Don W. Weber, State's Attorney, of Edwardsville (Stephen E. Norris and
Karen L. Stallman, both of State's Attorneys Appellate Service Commission,
of counsel), for the People.

J. William Lucco, of Mudge, Riley & Lucco Law Offices, of Edwardsville,
for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

An indictment charging defendant, James Barton, with two
counts of bribery, one count of conspiracy to commit bribery, and one
count of official misconduct was returned by the grand jury of Madi-
son County. On motion of defendant, the trial court entered an order
dismissing the indictment because of prosecutorial misconduct. The
State appeals.

The charges against defendant were based on allegations that
defendant, in his capacity as Madison County Supervisor of Assess-
ments, had accepted $1,000 from William Nichols and gave $500 of
the money to Walter Greathouse, a member of the Madison County

Zoning Board of Appeals, in order to obtain Greathouse's approval of a special-use permit requested by Mr. Nichols.

Defendant filed a pretrial motion requesting suppression of statements made by him on November 5, 1982, to an assistant State's Attorney and an Illinois Division of Criminal Investigation agent. The motion alleged that defendant had been denied his constitutional right to counsel. The trial court granted defendant's motion and entered an order suppressing the statements made by defendant.

Subsequently, defendant filed an amended motion to dismiss the indictment alleging, *inter alia*, that misconduct on the part of the Madison County State's Attorney had deprived him of due process of law. At the hearing on the motion to dismiss, Marvin Darling, a former administrative assistant of the Madison County State's Attorney, Don W. Weber, testified that in May 1981, Mr. Weber stated that he would get defendant. The parties subsequently stipulated to the introduction of the following evidence and exhibits into evidence:

Mr. Weber was elected State's Attorney of Madison County on November 4, 1980, and, a few days later, declared that the public wanted a prosecutor like "Attilla the Hun." Mr. Weber also pledged to investigate defendant.

On March 30, 1981, after a grand jury had failed to return an indictment against defendant for making improper property assessments, Mr. Weber publicly commented that "[t]here may not be criminal activity ***, but there might be grounds for dismissal or other disciplinary action." On May 15, 1981, Mr. Weber stated that he would comply with a recommendation made in the grand jury report that he release to the Madison County Board a report made by the Illinois Division of Criminal Investigation concerning defendant's activities in office.

On November 12, 1982, the newspaper media became aware of the fact that a new grand jury investigation of defendant was being conducted. That same day, defendant gave an interview to a newspaper reporter who had learned of the grand jury investigation. On November 16, 1982, Mr. Weber publicly announced that he would ask the grand jury to indict defendant for conspiracy to commit bribery and stated that William Nichols had told investigators that he gave defendant money for the purpose of influencing a zoning board of appeals decision. The next day, further comments from the State's Attorney were published concerning defendant's case.

On November 18, 1982, Mr. Weber told reporters that the indictment he sought against defendant for conspiracy to commit bribery was "not an iffy case." The State's Attorney commented to the press

about the testimony of William Nichols and stated that defendant "never was cleared of impropriety despite the finding of insufficient evidence" by the 1981 grand jury. On November 19, 1982, the State's Attorney suggested publicly that defendant was a "corrupt official." A few days later, defendant proclaimed his innocence in a newspaper interview. On November 24, 1982, there were a number of newspaper articles concerning Illinois Division of Criminal Investigation inquiries regarding defendant's alleged involvement in the bribery scheme.

On December 1, 1982, Mr. Weber again publicly urged that defendant be fired as Madison County Supervisor of Assessments. The following day, Mr. Weber urged that the defendant be "canned" prior to trial. When a reporter asked whether defendant should be considered innocent prior to trial, Mr. Weber replied that "[p]eople just don't understand the law." On December 6, 1982, a newspaper acknowledged that defendant's statements which were later suppressed were included in the discovery materials made available to the press by the prosecution. On December 16, 1982, Mr. Weber announced to the press his frustration with the Madison County Board's failure to fire defendant and said that he would seek an additional indictment against defendant for official misconduct. A day later, while commenting on the additional charge being sought against defendant, the State's Attorney said, "I want to make sure that I get him."

In early January 1983, Mr. Weber mailed a packet of material to the Madison County Board. The materials sent included Illinois Department of Criminal Investigation reports, a memorandum concerning dismissal procedures, and polygraph results suggesting deception on the part of Walter Greathouse. The incident and a description of the items mailed were reported in the newspaper.

On February 18, 1983, Mr. Weber was present at a public meeting attended by approximately 150 people. At this meeting Mr. Weber made the following remarks:

(1) "The more people we get involved in the Barton investigation, the more we can get them worked up."

(2) "Barton is presumed to be innocent and I do not want to prejudice his trial."

(3) "I told you a year and a half ago how I felt about this whole situation."

(4) "Barton is just like that school teacher, Van Hook [who had been recently convicted of taking indecent liberties with a child]."

(5) "Barton's trial is my number one priority along with the Prante case, now that Van Hook's case is over with."

On March 8, 1983, the personnel committee of the Madison County Board held a closed meeting concerning defendant. At this meeting, Assistant State's Attorney Keith Jensen addressed the committee. Mr. Jensen said that defendant was "telling the police one thing and turning around in front of the newspapers, he's a chameleon. He's innocent of anything. He wants his trial, he wants to hide behind the Fifth Amendment, he wants all the advantages he can, but he is conveying a different impression to those people than he is to you people." Following this meeting, Mr. Weber told reporters that the Madison County Board should fire defendant.

On March 12, 1983, a benefit dance was sponsored by the Illinois Division of Criminal Investigation. About 300 persons attended. During the dance, the State's Attorney made unspecified comments concerning defendant over the public address system. The comments were made in the context of a contest conducted by the State's Attorney to determine by crowd applause which statements made by public officials and recently convicted defendants should receive an award for the "dumbest statement" of the year.

On March 17, 1983, the State's Attorney publicly criticized the members of the Madison County Board for not firing defendant. Mr. Weber reiterated that defendant was his number one priority and again compared defendant to Van Hook, the man recently convicted of indecent liberties with a child.

On March 22, 1983, defendant's motion to suppress the statements he made on November 5, 1982, was heard. On March 25, 1983, Mr. Weber told the press that he had removed himself as prosecutor of defendant's case and suggested that defense counsel was attacking him as a "typical defense tactic." After the trial court entered an order on March 29, 1983, suppressing defendant's statements, the State's Attorney publicly derided the trial judge, stating that the judge was "not now, nor has he ever been a friend to the prosecution. Needless to say, he is not my favorite judge."

In an April 6, 1983, newspaper article, the State's Attorney was reported to have defended the tactics used to obtain defendant's statement and stated that "clever criminals require clever tactics to catch them." The next day, an amended motion to strike defendant's motion to dismiss was delivered to defense counsel by an assistant State's Attorney. Defense counsel was informed that the amended motion to strike, which alleged numerous violations of the Code of Professional Responsibility for lawyers (87 Ill. 2d R. 1—101 *et seq.*) on the part of defendant's attorney, would be filed in the trial court if the defendant's attorney proceeded to a hearing on the motion to dismiss.

On May 11, 1983, the trial court issued an order dismissing all counts against defendant on the grounds of prosecutorial misconduct. The trial court's order concluded that defendant had been denied due process, that defendant's right to counsel of his choice had been seriously impaired, that fundamental fairness had been violated, and that the entire course of the prosecutor's conduct had caused actual and substantial prejudice to defendant. The State has perfected this appeal in which we are asked to review the propriety of the trial court's dismissal of the indictment.

In the order of dismissal, the trial court did not specify what due process right or rights it felt had been violated. We agree with the State, however, that two due process grounds appear applicable: (1) prejudicial pretrial publicity generated by the State's Attorney; and (2) denial of defendant's right to counsel.

■ As defendant correctly notes, the trial court has the inherent authority to dismiss an indictment where there has been a clear denial of due process. (*People v. Lawson* (1977), 67 Ill. 2d 449, 455-56, 367 N.E.2d 1244, 1246.) It is also true, however, that this power should be utilized with restraint and a due process violation will warrant dismissal of an indictment only if the violation is clear and can be ascertained with certainty. (*People v. Lawson* (1977), 67 Ill. 2d 449, 456-57, 367 N.E.2d 1244, 1247; *People v. Schroeder* (1981), 102 Ill. App. 3d 133, 135-36, 429 N.E.2d 573, 576.) To support a dismissal of a criminal charge because of prosecutorial misconduct, the alleged misconduct must result in actual and substantial prejudice to a defendant. (*People v. Lawson* (1977), 67 Ill. 2d 449, 367 N.E.2d 1244; *People v. Mack* (1982), 107 Ill. App. 3d 164, 171, 437 N.E.2d 396, 402.) Applying this standard to the case at bar, we find that the prosecutor's conduct in the instant case does not require dismissal of defendant's indictment.

Although there was ample evidence of potentially adverse publicity, such proof alone does not necessarily establish prejudice since a defendant can receive a fair trial by impartial jurors despite harmful publicity. (*People v. Torres* (1973), 54 Ill. 2d 384, 389, 297 N.E.2d 142, 145; *United States v. Stanford* (7th Cir. 1978), 589 F.2d 285, 298-99.) In *Stanford*, a case dealing with a similar due process contention regarding adverse publicity, the court observed that there are more traditional procedures for avoiding prejudice due to adverse publicity. These procedures include the *voir dire* process, a motion for a continuance and a motion for a change of venue. (*United States v. Stanford* (7th Cir. 1978), 589 F.2d 285, 299.) In the case at bar, defendant failed to pursue any of these avenues of relief. Defendant made no motion

for a change of venue nor did he move for a continuance. Further, the trial court dismissed the indictment prior to trial where the *voir dire* examination of prospective jurors would have been conducted. In doing so, the trial court could not have determined whether any actual prejudice to the defense resulted from adverse publicity generated by the prosecution. *United States v. Stanford* (7th Cir. 1978), 589 F.2d 285.

Additionally, we note that the trial court has the statutory power to appoint a special prosecutor whenever a prosecutor "is interested in any cause or proceeding" (Ill. Rev. Stat. 1981, ch. 14, par. 6). In the present case, the trial court's concern about the conduct of the State's Attorney could have been eliminated by the appointment of a special prosecutor with no personal interest in defendant's case.

In view of the evidence and the availability of procedures to offset prejudice due to adverse publicity, we conclude that the trial court's dismissal of defendant's indictment was erroneous. The trial court's conclusion that actual and substantial prejudice to defendant resulted from the publicity was speculative and did not justify punishing society for the misconduct of a prosecutor. See *United States v. Stanford* (7th Cir. 1978), 589 F.2d 285, 299.

■ The alternative due process ground for dismissal, the denial of defendant's right to counsel at the November 5, 1982, interview, is also not a compelling reason to dismiss the defendant's indictment in the case at bar. The proper remedy for infringement of the right to counsel is suppression of the evidence obtained in violation of that right, not dismissal. (*United States v. Morrison* (1981), 449 U.S. 361, 366, 66 L. Ed. 2d 564, 569, 101 S. Ct. 665, 668-69; *People v. Amft* (1982), 109 Ill. App. 3d 619, 624, 440 N.E.2d 924, 928.) Since the statements allegedly illegally obtained from defendant were in fact suppressed, defendant has failed to demonstrate prejudice as a result of prosecutorial misconduct in denying defendant the right to counsel.

Although we have determined that there was insufficient proof that the conduct of the State's Attorney resulted in the denial of due process so as to warrant a dismissal of the criminal proceedings in the instant case, we emphasize that we do not condone the prosecutor's behavior. The actions of Mr. Weber in these proceedings were wholly unjustified and inappropriate. While we applaud the vigorous prosecution of crime, we are appalled when, as here, a prosecutor becomes a persecutor. If the conduct of a prosecutor is the result of any motive other than the fair and impartial prosecution of alleged crimes, such conduct must not be tolerated by a court.

The conduct of the prosecutor in the case at bar was, to say the

least, reprehensible. The question of the sanctions to be applied as punishment for such conduct and to ensure that it is not repeated is not before this court. However, the interest of the public in the impartial prosecution of alleged crimes dictates that this cause be reversed and remanded to the trial court for further proceedings free of the acrimony and apparent vendetta that characterized the proceedings which prompted the trial court to dismiss the indictment.

For the foregoing reasons, the judgment of the circuit court of Madison County is reversed and this cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

JONES and KARNS, JJ., concur.