*In re* APPOINTMENT OF SPECIAL PROSECUTOR.

Fifth District   No. 5—92—0423

Opinion filed November 23, 1993.

William R. Haine, State's Attorney, of Edwardsville (Norbert J. Goetten and Stephen E. Norris, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellant.

Michael S. Williams, of Cueto, Cueto & Cueto, Ltd., of Belleville, for appellee.

JUSTICE LEWIS delivered the opinion of the court:

The State's Attorney of Madison County appeals from an order by the trial court appointing a special prosecutor, Richard Sturgeon, to investigate and prosecute, if necessary, the allegations of perjury and subornation of perjury filed by petitioner, Amiel Cueto (Cueto), against a former assistant State's Attorney, Donald Weber (Weber), and Dr. Edwin Wolfgram (Dr. Wolfgram).

I. FACTS

In order to understand the issues in this case, it is necessary for us to provide a short history of some of the extensive litigation between Cueto and Weber. It all apparently started when Weber, as State's Attorney of Madison County in 1981, unsuccessfully prosecuted a client of Cueto for a sex offense. Cueto claimed that Weber knew that his client was innocent. Cueto then wrote each member of the County Board of Supervisors of Madison County, the Chief

Judge of the Third Judicial Circuit, and the Attorney Registration and Disciplinary Commission accusing Weber of committing numerous immoral acts and crimes. Weber countered by filing a libel action in Madison County against Cueto (Weber v. Cueto, No. 83—L—707) asking for damages in the amount of $185 million. A special prosecutor was appointed to investigate the allegations made by Cueto in his letter, but no charges resulted against Weber.

Since Weber alleged in his libel action that he suffered mental anguish, he went to a psychiatrist, Dr. Wolfgram, for a diagnosis and, according to Dr. Wolfgram, treatment. Dr. Wolfgram then gave a discovery deposition in Weber's libel suit on July 18, 1989, in his office in St. Louis, Missouri, in which he stated that he had seen Weber on 10 occasions, that Weber suffered from a post-traumatic stress disorder, a major depression with psychotic features, that such conditions were continuing and permanent, that Weber was suicidal, that he had a social phobia or fear of running for office, and that Weber could not hold or secure an elected office due to not being "in touch with reality as he had once known reality."

In 1992, there was a vacancy on the supreme court of Illinois to be filled by election in the fifth appellate district. Weber announced his candidacy, and after Weber won the Republican primary, Cueto announced to the news media the psychiatric conclusions contained in Dr. Wolfgram's discovery deposition as to Weber's mental condition.

The petition filed by Cueto in the case at bar was first styled "Amiel Cueto, Petitioner, v. Donald Weber and Edwin Wolfgram, Respondents" but was later amended to be styled "In re Appointment of a Special Prosecutor." The petition alleged that Cueto was a victim of perjury and subornation of perjury committed by Weber and Dr. Wolfgram. Cueto's reasoning was that Weber contradicted Dr. Wolfgram's sworn deposition by stating to the news media that Dr. Wolfgram was not treating him, that he was not considering suicide, that Wolfgram "probably exaggerated" his mental condition, and that Wolfgram was hired to get "the best twist on damages." Cueto also alleged that after Weber made his remarks to the press, Dr. Wolfgram then told the press that Weber was fit to hold public office.

The State's Attorney of Madison County strenuously objected to the appointment, arguing to the court that he was the constitutionally elected officer that had the sole duty to determine who should be prosecuted in Madison County, that he had no "interest" in Weber's suit against Cueto, that merely because a former employee

of the State's Attorney is accused of a criminal offense does not automatically give rise to a *per se* conflict of interest on the part of the State's Attorney, that the petition does not set forth sufficient facts, even if true and construed most favorably for petitioner, showing that the crimes of perjury and subornation of perjury have been committed, and that Cueto was just using the courts to harass Weber.

Weber's and Dr. Wolfgram's participation in the proceedings was limited by the trial judge to supplementing the record with anything they wished to file. Weber did file a motion to dismiss and for sanctions setting out five instances in which Weber alleged that Cueto had used the court system for political purposes and that Cueto was once again "using the court system for his political advantage" and in an "abusive and unethical way." "Cueto's petition," according to Weber, "was filed with all the conscience of Heinrich Himmler and all the sincerity of Josef Goebbels."

Cueto responded to only the State's Attorney's objections by arguing that the State's Attorney had an "interest" that required his removal from this case, pursuant to section 3—9008 of the Counties Code (Ill. Rev. Stat. 1991, ch. 34, par. 3—9008), in that all of the prosecutions by Weber as assistant State's Attorney could be challenged if Weber were found guilty of subornation of perjury, that the State's Attorney could be called as a witness since he was the former employer of Weber, that Weber was highly criticized by this court in *People v. Barton* (1984), 122 Ill. App. 3d 1079, 462 N.E.2d 538, and *People v. Barton* (1989), 190 Ill. App. 3d 701, 546 N.E.2d 1091, but the State's Attorney did not investigate and prosecute Weber for what may have amounted to criminal conduct in those cases, that Weber was a candidate for the supreme court so the public had an interest in knowing if this candidate was guilty of a crime, that the State's Attorney was objecting too strenuously which may indicate that he had some ulterior motive in not wanting the matter investigated, and that the question is not whether a crime was actually committed but whether the matter should be investigated by an impartial prosecutor to see if a crime should be charged.

The judge issued an order giving as his reasons for appointing a special prosecutor that the employer/employee relationship between Weber and the State's Attorney constituted an "interest" disqualifying the State's Attorney from the case under section 3—9008 of the Counties Code, that the alleged crime was committed at a time when Weber was an employee of the State's Attorney, that the

State's Attorney would not be perceived to be fair in dealing with a former employee whether he chose to prosecute or not to prosecute, that the State's Attorney could be called as a witness, and that the facts alleged at least raised the question of a crime having been committed. The trial judge further stated, in his ruling against the State's Attorney on a subsequent filing of a motion to stay, that he did not see how the State's Attorney could maintain that he did not have a conflict of interest, when on the very day the State's Attorney had argued against the appointment of a special prosecutor, the State's Attorney had filed an unsworn petition requesting the appointment of a special prosecutor because of the State's Attorney having an "interest" in another case involving the nephew of a part-time assistant State's Attorney.

## II. THE OPINION OF THIS COURT

We have set forth the parties' positions and arguments in an abbreviated manner as the parties apparently wished that their positions be aired. Admittedly, Weber's and Dr. Wolfgram's positions are not included in any great detail, as their participation was limited by the trial judge due to their being subjects of a potential criminal investigation.

When this case came on for oral argument, this court immediately raised the issue of mootness, before the appellate prosecutor could even commence his argument on behalf of the State's Attorney.

"A case becomes moot where the issues raised in and decided by the trial court no longer exist because events have occurred since filing of the appeal which make it impossible for the reviewing court to render effectual relief." (*Balmoral Racing Club, Inc. v. Illinois Racing Board* (1992), 151 Ill. 2d 367, 387, 603 N.E.2d 489, 496.)

Moreover, "It is well established that a reviewing court will dismiss a pending appeal where the court has notice of facts making it impossible to grant effective relief." *George W. Kennedy Construction Co. v. City of Chicago* (1986), 112 Ill. 2d 70, 76, 491 N.E.2d 1160, 1162.

The appellate prosecutor admitted that the special prosecutor had filed charges against Weber and Dr. Wolfgram, that those charges had been dismissed by the trial court, and that the dismissals were not appealed. He also stated in his brief that, since the statute of limitations on the alleged offenses expired on July 18, 1992, the issues presented in petitioner's petition were moot. In ad-

dition, Cueto's brief indicated that a court had found no probable cause existed on the charges brought by the special prosecutor. Further, logic dictates that if charges had been brought and were still pending against Weber and Dr. Wolfgram the criminal case would have to be joined with the case at bar, if the determination of the special prosecutor's status would have any effect on the parties. Since there is no criminal case pending or any suggestion as to how another criminal case could be brought against Weber and Dr. Wolfgram based on the allegations in the petition, we fail to see how we can render effectual relief for any party.

This court next inquired into the whereabouts of the special prosecutor, since he failed to file a brief or appear for oral argument. It would seem that the special prosecutor would be an interested party, since his status was in question. The parties did not know why he failed to appear. We can only assume that our resolution of his status makes no difference to him.

We asked counsel for Cueto why he was before us and why he felt it was necessary to Cueto to file a brief instead of the special prosecutor. It seemed strange, to say the least, that Cueto would continue in the case by filing a brief and sending an associate to Mt. Vernon for oral argument considering the fact that a special prosecutor was appointed and presumably could defend for himself his appointment. There was also the question of mootness of the case and how it would affect Cueto no matter what this court ruled. Counsel for Cueto replied that he really did not know why he was before us, except that he felt someone needed to protect and defend the ruling of the trial court and Cueto's position in this matter. Counsel admitted that any ruling as to the status of the special prosecutor would not affect Cueto.

As to Weber and Dr. Wolfgram, even if we were to reverse the ruling of the trial court, we could not change their positions in these events. The State's Attorney urges this court to rule that the trial judge's order was void, citing *People v. Wade* (1987), 116 Ill. 2d 1, 506 N.E.2d 954, as authority. If we could do so, it could not assist Weber and Dr. Wolfgram in the case *sub judice*. *Wade* holds, however, that "[a] void judgment is one entered by a court without jurisdiction of the parties or the subject matter or that lacks 'the inherent power to make or enter the particular order involved.'" (*Wade*, 116 Ill. 2d at 5, 506 N.E.2d at 955, quoting *R.W. Sawant & Co. v. Allied Programs Corp.* (1986), 111 Ill. 2d 304, 309, 489 N.E.2d 1360; *City of Chicago v. Fair Employment Practices Comm'n* (1976), 65 Ill. 2d 108, 112, 357 N.E.2d 1154.) Clearly, the

trial judge had jurisdiction over Cueto and the State's Attorney of Madison County. The judge also had jurisdiction over the subject matter, the appointment of a special prosecutor. Moreover, it should be readily apparent that the trial judge had the inherent power to make or enter the order appointing the special prosecutor. Even if we assume, *arguendo*, that the trial judge abused his discretion in making the appointment and that the case should be reversed, it would not be on the grounds that the judge did not have the inherent power; rather, it would be on the grounds that even though he had the power, he wrongfully used his power. (See *People v. Davis* (1993), 156 Ill. 2d 149, 619 N.E.2d 750 (for a complete discussion of jurisdiction in relation to the issue of void versus voidable).) Weber and Dr. Wolfgram cannot be given effectual relief no matter what this court does.

The appellate prosecutor urges this court not to rule that this case is moot, as the order appointing the special prosecutor was an open order and the special prosecutor has not asked to be discharged or been discharged by the trial court. The State's Attorney also wanted a ruling so that this court would be "sending a message to trial judges" not to appoint special prosecutors over the objections of the State's Attorney, except in extreme and extenuating cases.

We disagree that the order appointing the special prosecutor is an open order. The trial judge appointed the special prosecutor "in this matter," which obviously referred to the deposition by Dr. Wolfgram, since the trial judge stated in his order that the deposition was the "cornerstone of the alleged perjurious conduct." The deposition of Dr. Wolfgram was taken on July 18, 1989, so the statute of limitations expired on July 18, 1992, unless Weber uses or presents the deposition to a decision maker at some future time. The State's Attorney argued throughout all of the proceedings and on appeal that the crime of perjury is not committed until the perjured testimony is presented to a decision maker. (See *People v. Mason* (1978), 60 Ill. App. 3d 463, 376 N.E.2d 1059; Ill. Rev. Stat. 1989, ch. 38, par. 3—5(b) (now 720 ILCS 5/3—5(b) (West 1992)).) The special prosecutor, however, would be hard pressed to justify any further actions in this matter based on the speculation that Weber may attempt in the future to use a deposition taken from his witness by Cueto. Moreover, the State's Attorney did not argue or illustrate as to how he feared interference in the discharge of his duties from the special prosecutor.

We cannot presume or speculate as to how or whether Weber may make use of Dr. Wolfgram's deposition in some future trial. Conjecture, as to what would happen if he did present such deposition to a decision maker, is pointless. Even if this eventuality arose, it would involve new facts and a new consideration of whether an appointment of a special prosecutor would be justified.

The State's Attorney urges this court to decide this case in his favor, because there is a need to "send a message to the trial judges" not to abuse their discretion by so readily appointing special prosecutors. This court "sent a message to the trial judges" via a directive in *People v. Layhew* (1989), 191 Ill. App. 3d 592, 548 N.E.2d 25. The supreme court promptly and clearly "sent a message" back to this court, "We must remind that court that there is but one appellate court within the State of Illinois, and that a panel of the appellate court does not have constitutional authority to issue 'directives' to lower courts within its district." (*People v. Layhew* (1990), 139 Ill. 2d 476, 489, 564 N.E.2d 1232, 1238.) The short-lived venture by this court into the business of sending messages has been permanently discontinued.

We could, of course, merely state our opinion or give an advisory opinion. In fact, any decision as to the merits in the case *sub judice* would be an advisory opinion, because "[w]here a decision reached on the merits cannot eventuate in appropriate relief to the prevailing party, the court, in effect, has rendered an advisory opinion." (*George W. Kennedy Construction Co. v. City of Chicago* (1986), 112 Ill. 2d 70, 76, 491 N.E.2d 1160, 1162.) Courts, however, should not render advisory opinions or declaratory judgments in the absence of an actual controversy. We do not review cases merely to guide future litigation or to set precedent. (*Madison Park Bank v. Zagel* (1982), 91 Ill. 2d 231, 235, 437 N.E.2d 638, 640.) Our supreme court best summarized the position of reviewing courts years ago in saying:

> "A court of review will dismiss an appeal when it has notice of facts which show that only moot questions or abstract propositions are involved. When a case presents or involves no actual controversy, interests or rights of the parties, or when the issues have ceased to exist, or when only abstract questions are involved on which the court can grant no effectual relief to either party, or when, pending the disposition of a case in a court of review, an event occurs which renders any judgment which might be entered by the reviewing court useless and unavailing to either party, the appeal or writ of

error will be dismissed." *First National Bank v. Road District No. 8* (1945), 389 Ill. 156, 159, 58 N.E.2d 884, 886.

See also *First National Bank v. Kusper* (1983), 98 Ill. 2d 226, 456 N.E.2d 7; *Howlett v. Scott* (1977), 69 Ill. 2d 135, 370 N.E.2d 1036; *La Salle National Bank v. City of Chicago* (1954), 3 Ill. 2d 375, 121 N.E.2d 486.

The only exceptions to the mootness doctrine are made in rare cases, where the magnitude or immediacy of the interests involved warrants action by the court or where the issue is likely to recur but unlikely to last long enough to allow appellate review to take place because of the intrinsically short-lived nature of the controversies in which it could arise. (*Dixon v. Chicago & North Western Transportation Co.* (1992), 151 Ill. 2d 108, 601 N.E.2d 704.) We see no magnitude or immediacy of interests that would warrant second-guessing the trial judge for the sole purpose of giving one or more parties the satisfaction of having been correct in their position in the matter. The record in this case reflects that the trial judge carefully and with due deliberation made a difficult decision under extreme pressure. That decision does not presently, nor will it in the future, impact the lives of any of the parties or interfere with the performance of the State's Attorney of his duties. Nor is this the type of case that is short-lived so that appellate review cannot take place. There have been a number of cases reviewed by the appellate courts involving the appointment of a special prosecutor over the objection of the State's Attorney. (See *Baxter v. Peterlin* (1987), 156 Ill. App. 3d 564, 509 N.E.2d 156; *People ex rel. York v. Downen* (1983), 119 Ill. App. 3d 29, 456 N.E.2d 286.) If the charges had not been dismissed against Weber and Dr. Wolfgram, appellate review would have occurred in the case at bar.

We are confident that the trial judges in this State do not need to be "sent a message" about how they should discharge their duties. Since we have not been presented with any good reason to decide the merits of this case and since the case law dictates that we exercise judicial restraint, we accordingly are dismissing this appeal without expressing any view on the merits of the trial judge's order.

Appeal dismissed.

MAAG and GOLDENHERSH, JJ., concur.