THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JUDY POLONOWSKI, Defendant-Appellee.

Fifth District    No. 5—93—0458

Opinion filed February 22, 1994.

Charles Garnati, State's Attorney, of Marion (Norbert J. Goetten, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

John Speroni, of Lockwood & Speroni, P.C., of Marion, for appellee.

JUSTICE RARICK delivered the opinion of the court:

The defendant, Judy Polonowski, was initially charged on May 26, 1992, in the circuit court of Williamson County with second-degree murder and aggravated battery with a firearm. An additional charge of aggravated discharge of a firearm and three counts of first-degree murder were subsequently added. All were in connection with the shooting death of Robert Sprague.

On August 20, 1992, defendant indicated in her response to the State's motion for discovery that she would assert the defense of self-defense and that she was a woman with battered woman's syndrome acting in self-defense. On December 17, 1992, defendant filed a supplemental response disclosing Dr. Michael Althoff, a clinical psychologist, as an expert witness. On December 21, 1992, defendant advised Assistant State's Attorney Mike Ruffley that Dr. Althoff would be called as an expert witness and that it was his opinion that defendant suffered from battered woman's syndrome and was acting in self-defense when she shot Sprague. Dr. Althoff's complete report was produced on January 4, 1993.

On June 1, 1993, defendant moved to dismiss the charges, arguing that Williamson County State's Attorney Charles Garnati was engaged to Tamara Koegel, the niece of the wife of defendant's expert, Dr. Althoff, and that such relationship created a conflict of interest. Defendant also argued that the prosecutor's failure to disclose this information during discovery constituted prosecutorial misconduct. Dr. Althoff, a psychologist, had rendered an opinion that defendant suffered from "battered woman's syndrome" and had acted in self-defense when she killed Sprague. Defendant's motion further alleged that she had disclosed Dr. Althoff's name and his opinion during discovery.

Defense counsel first learned of the relationship in question on May 28, 1993, when he met with Dr. Althoff for trial preparation. During the discussion with Dr. Althoff, defense counsel revealed his theory of defense and critical matters of trial strategy. At that point, Dr. Althoff told defense counsel that he would be related to the State's Attorney by marriage in two weeks.

A hearing on defendant's motion to dismiss was held on July 8, 1993. Garnati testified that although he had filed the initial charges against defendant and was "probably" still personally handling the case in August of 1992, Assistant State's Attorney Ruffley took over the prosecution of the case "possibly" in December of 1992. Garnati was not sure if his assistants knew of his relationship with Dr. Althoff. He testified that his assistants kept him "somewhat" advised of the progress of the case, and that he would expect them to consult him before making any major decisions.

Garnati indicated that he and Koegel had dated for about two years and became engaged in January of 1993. They were married at the time of the hearing. Garnati was not certain when he became aware that Dr. Althoff was married to Koegel's aunt, but he knew it prior to becoming engaged to Koegel.

Garnati also testified that he does not see Dr. Althoff socially, nor does he consider him a member of the family. He had seen Dr. Althoff a total of four times in his life, including the hearing. Neither he nor Dr. Althoff had discussed anything about defendant's case with each other.

Finally, Garnati testified that he did not notify defense counsel that Koegel was related by marriage to Dr. Althoff because he saw no legal or ethical duty to do so.

Dr. Althoff testified that defense counsel employed him in the fall of 1992 and that he had evaluated the defendant and submitted a report to defense counsel. Dr. Althoff stated that he had not discussed anything about the defendant's case with Garnati and that any such discussion would violate the doctor-patient privilege.

Dr. Althoff testified that he and Koegel's aunt were married in November of 1990 and that he had seen Koegel only twice in the past year, including her wedding. He indicated that he had seen Garnati probably twice in the previous year.

Dr. Althoff also testified that Garnati's marriage to Koegel had not caused him to alter his opinion or diagnosis of the defendant, nor did he believe his relationship with Garnati would have any effect on his testimony.

In closing, defendant argued that the impending marriage created a conflict of interest which the State failed to disclose and that such relationship deprived her of the use of Dr. Althoff because she feared Dr. Althoff's testimony might unconsciously favor the State. Defendant further argued that defense counsel was unable to freely discuss her case with Dr. Althoff because of his relationship with Garnati. Defendant also argued that because she had exhausted all of her funds, she could not afford to hire another expert. The prosecutor argued that any alleged error could be cured by the appointment of a special prosecutor.

The trial court dismissed the charges, finding that while it did not believe that Dr. Althoff would deliberately slant his testimony to benefit the prosecution, his testimony could be affected subconsciously and that such effect could be reflected in his demeanor. The trial court also found that the State's Attorney did not deliberately attempt to mislead the defendant and that he honestly did not believe that it was necessary to inform defendant of his relationship with Dr.

Althoff. The trial court further ruled that appointment of a special prosecutor would not cure the prejudice to the defendant because the special prosecutor would most likely consult with the State's Attorney as a starting point for his prosecution of the case.

On appeal, the State argues that the trial court erred in dismissing the charges because there was no conflict of interest arising from the relationship between Garnati and Dr. Althoff and because the failure to disclose such relationship did not constitute prosecutorial misconduct and thereby deprive defendant of due process. We agree.

■ The trial court has the inherent authority to dismiss an indictment or information against a defendant where there has been a clear denial of due process. (*People v. Lawson* (1977), 67 Ill. 2d 449, 367 N.E.2d 1244.) This power should be utilized with restraint, and a due process violation will warrant dismissal only where the violation is clear and can be ascertained with certainty. (*Lawson*, 67 Ill. 2d at 456-57, 367 N.E.2d at 1247; *People v. Barton* (1989), 190 Ill. App. 3d 701, 546 N.E.2d 1091.) Dismissal of charges based upon prosecutorial misconduct is warranted only where the alleged misconduct results in actual and substantial prejudice to the defendant. *People v. Barton* (1984), 122 Ill. App. 3d 1079, 462 N.E.2d 538; see also *People v. Seehausen* (1990), 193 Ill. App. 3d 754, 550 N.E.2d 702.

> " '[A prosecutor acts] in a *quasi*-judicial capacity, and he and those associated with him should represent public justice and stand indifferent as between the accused and any private interest. It is as much the duty of prosecuting attorneys to see that a person on trial is not deprived of any of his statutory or legal rights as it is to prosecute him for the crime with which he may be charged. [Citation.] *** An attorney cannot be permitted to assist in the prosecution of a criminal case if by reason of his professional relations with the accused he has acquired a knowledge of the facts upon which the prosecution is predicated or which are closely interwoven therewith.' " (*People v. Curry* (1971), 1 Ill. App. 3d 87, 91, 272 N.E.2d 669, 672, quoting *People v. Gerold* (1914), 265 Ill. 448, 478, 107 N.E. 165.)

(See also *People v. Rhymer* (1975), 32 Ill. App. 3d 431, 336 N.E.2d 203; *People v. Lee* (1972), 8 Ill. App. 3d 232, 289 N.E.2d 641 (abstract of opinion).) The cases cited above refer to situations where, because of a past professional relationship with the accused, the prosecutor had a conflict of interest which denied the defendant a fair trial. In the case before us, however, the alleged conflict arises from a *personal* relationship between the prosecutor and one of the defendant's witnesses rather than with the defendant herself.

■ Conflict of interest issues have also been considered in the context of a criminal defendant's constitutional right to effective assistance of counsel. The sixth amendment right to counsel includes the right to representation free from conflicts of interest. (*Wood v. Georgia* (1981), 450 U.S. 261, 67 L. Ed. 2d 220, 101 S. Ct. 1097.) In *People v. Franklin* (1979), 75 Ill. 2d 173, 387 N.E.2d 685, our supreme court noted:

> "This court has repeatedly stated that a defendant's fundamental right to effective assistance of counsel entitles the person represented to the undivided loyalty of counsel and prohibits a defense attorney from representing conflicting interests or undertaking the discharge of inconsistent obligations. [Citations.] In furtherance of this fundamental right, this court has adopted a *per se* rule which provides essentially that where defense counsel is involved in an actual or potential conflict of interest, it is unnecessary for the defendant to establish actual prejudice, as prejudice is presumed by law." (*Franklin*, 75 Ill. 2d at 176, 387 N.E.2d at 686.)

The conflict of interest in *Franklin* involved conflicting *professional* commitments. In *People v. Lewis* (1981), 88 Ill. 2d 429, 430 N.E.2d 994, our supreme court declined to extend the application of the *per se* rule to conflicts arising from personal relationships not involving substantial emotional ties. In *Lewis*, the defendant was charged with murder and armed robbery. Defendant's appointed counsel was acquainted with the victim and attended his funeral. The court held defense counsel's personal, work-based acquaintance with the victim did not warrant reversal of defendant's convictions absent a showing of prejudice. *Lewis*, 88 Ill. 2d at 441, 430 N.E.2d at 1000.

In *People v. Davis* (1983), 97 Ill. 2d 1, 452 N.E.2d 525, defense counsel was "a close personal friend" of the person whom defendant was accused of murdering. In rejecting defendant's allegation that he was denied effective assistance of counsel by virtue of the conflict of interest, the *Davis* court stated, "Where personal relationships are at issue, we must presume that an attorney will not undertake to represent a defendant if his professional duty will be hampered by emotional ties." *Davis*, 97 Ill. 2d at 16, 452 N.E.2d at 532.

In *People v. Free* (1986), 112 Ill. 2d 154, 492 N.E.2d 1269, defendant argued that he was denied effective assistance of counsel based upon a conflict of interest arising because the public defender knew the victim. The public defender knew the victim from the occasions when the victim drove her mother-in-law to his office, and he informed the court that he had seen her "four to six times." The court held that because the public defender did not have a profes-

sional relationship with the victim, prejudice would not be presumed, and that no actual prejudice had been demonstrated. *Free*, 112 Ill. 2d at 168, 492 N.E.2d at 1275.

In *People v. Crews* (1988), 122 Ill. 2d 266, 522 N.E.2d 1167, defendant appealed the denial of defense counsel's motion to withdraw. Counsel's motion had been made at the defendant's request because the defendant was concerned about the number of prison officers and employees with whom counsel was acquainted. Such acquaintances were apparently formed during counsel's prior service as a Randolph County State's Attorney. In rejecting defendant's argument, our supreme court held that because the conflict alleged was based upon counsel's personal rather than professional relationships, defendant was required to demonstrate actual prejudice. *Crews*, 122 Ill. 2d at 284-85, 522 N.E.2d at 1176.

The cases discussed above all involve conflicts of interest between defense counsel and the accused, rather than between the prosecutor and a defense witness. Although our research has disclosed no cases on point and the case before us appears to be one of first impression, it was not unforeseen. Explaining its reasons for declining to extend the *per se* rule, our supreme court in *Lewis* prophetically stated:

> "If the *per se* rule were extended to the present case, there would appear to be no appropriate limit to that rule. Much of the rationale urged with respect to personal acquaintance with victims would apply to acquaintance with witnesses, at least key prosecution witnesses. [Citations.] A *per se* rule which disqualified a defense lawyer because of his acquaintanceship with law-enforcement officers who are to be called upon to testify at a criminal trial would, if carried to its logical conclusion, seem to preclude any localized practice by a criminal defense attorney. Under such a rule, as the attorney handled more cases, and became more acquainted with law-enforcement personnel, he would be progressively restricted in the criminal cases which he could take. *Finally, if such personal relationships pose per se disqualifying conflicts of interest, the ramifications of the rule would not be limited to criminal defense counsel, for prosecutors acquainted with defendants or their witnesses would face similar problems.*" (Emphasis added.) (*Lewis*, 88 Ill. 2d at 440-41, 430 N.E.2d at 1000.)

It appears that the very situation foreseen by the *Lewis* court is before us in the present case.

■ In the present case, the relationship in question was a personal one, not a professional one, and in the absence of some showing that the relationship involved significant emotional ties, it was incumbent upon the defendant to demonstrate actual and substantial prejudice.

The record overwhelmingly demonstrates that there was no actual prejudice. Indeed, the trial court found only the "possibility of prejudice." The relationship between Garnati and Dr. Althoff was tenuous at best. They had seen each other only a few times, and neither they nor their wives socialized. Garnati testified that he did not consider Dr. Althoff a member of his family. Given the evidence in the record, defendant has not demonstrated any actual prejudice. Further, we conclude that the relationship in question is not one involving substantial emotional ties. The fact that the relationship was familial does not in and of itself create substantial emotional ties, especially given that the familial relationship was created by marriage.

Defendant's position, however, is that it was the failure to disclose the existence of the relationship, not the relationship itself, that resulted in actual and substantial prejudice to her and deprived her of due process. Such prejudice and denial of due process arose, the defendant contends, because she was deprived of using her retained expert out of fear that his testimony could subconsciously favor the prosecution, because defense counsel could not freely discuss the case with Dr. Althoff, and because defense counsel had already revealed critical matters of trial strategy to Dr. Althoff. We are not persuaded by defendant's argument. Contrary to defendant's argument, we must focus upon the nature of the relationship because that is the determinative factor with respect to whether Garnati was under any duty to disclose the existence of the relationship and therefore whether the failure to disclose the relationship deprived defendant of due process. As we stated above, the nature of the relationship is not such that prejudice can be presumed, and defendant has failed to show any actual prejudice from the existence of the relationship. Defendant cannot "bootstrap" prejudice into the analysis based upon the failure to disclose a relationship that created no conflict of interest in the first place.

Alternatively, we find persuasive the State's argument that assuming a disqualifying conflict did exist, the trial court could have eliminated it by the appointment of a special prosecutor pursuant to section 3—9008 of the Counties Code (55 ILCS 5/3—9008 (West 1992); see also *Baxter v. Peterlin* (1987), 156 Ill. App. 3d 564, 509 N.E.2d 156; *Barton*, 122 Ill. App. 3d at 1084, 462 N.E.2d at 542). The trial court declined to appoint a special prosecutor because it found that a special prosecutor would consult with Garnati or his assistants as a starting point. The trial court could have prevented this by entering an order forbidding any such contact. While the decision of whether to appoint a special prosecutor rests with the discretion of the trial court (*People v. Trolia* (1982), 107 Ill. App. 3d 487, 437 N.E.2d 804),

we conclude that under the circumstances of this case, the failure to appoint a special prosecutor as a less drastic alternative to the dismissal of the charges was an abuse of discretion.

The State also argues that as an alternative to dismissal, the trial court could have entertained a motion by defendant for the appointment and funding of an expert to assist her in her defense. To qualify for the appointment and funding of an expert witness, a defendant must: (1) apprise the court of the need for the expert and the relevancy of the expert's testimony; (2) identify the expert whom he wishes to employ; (3) provide an estimate of the fees involved; and (4) establish indigence. (*People v. Sims* (1993), 244 Ill. App. 3d 966, 981, 612 N.E.2d 1011, 1025, citing *People v. Hebel* (1988), 174 Ill. App. 3d 1, 527 N.E.2d 1367.) The need for an expert and the relevancy of the testimony were clear. The defendant would only have had to provide the court with the name of a new expert and an estimate of his fees and provide evidence supporting her representations to the court that she had exhausted her financial resources. Assuming, *arguendo*, that such a showing could have been made, the trial court could have appointed an expert in lieu of Dr. Althoff, and such appointment would have eliminated the conflict in question and the potential prejudice therefrom.

For the foregoing reasons, the judgment of the circuit court of Williamson County is reversed, and this cause is remanded for further proceedings.

Reversed and remanded.

LEWIS, P.J., and CHAPMAN, J., concur.