THE PEOPLE *ex rel.* MICHAEL RAY YORK *et al.*, Petitioners-Appellees *v.* ALAN C. DOWNEN, Hamilton County State's Attorney, Respondent-Appellant.

Fifth District   No. 83—295

Opinion filed November 4, 1983.—Rehearing denied December 5, 1983.

Alan C. Downen, State's Attorney, of McLeansboro, for appellant, *pro se.*

Charles M. Given, of Mt. Vernon, for appellees.

JUSTICE WELCH delivered the opinion of the court:

Respondent Alan Downen, State's Attorney of Hamilton County, appeals from an order of the circuit court of that county enjoining him from conducting a grand jury investigation into alleged election irregularities occurring in connection with the general election held November 2, 1982. That order also appointed the Attorney General of the State of Illinois as a special prosecutor for the purposes of conducting such an investigation. The respondent's assignments of error are that (1) the trial court erred in denying his motion for a change of venue as a matter of right, (2) the petition and the evidence in support of it were insufficient to justify the appointment of a special prosecutor, and (3) the injunction issued was overly broad. Because we agree that the petitioners have not established cause to appoint a special prosecutor, we reverse the court's order and need not consider the remaining issues.

The alleged election irregularities which are the subject of this litigation have to do with the casting of approximately 700 absentee ballots in the 1982 general election. After that election took place, the

respondent was contacted by the Illinois State Board of Elections, who alerted him to the possibility of those irregularities. The respondent, in turn, contacted the Illinois Department of Criminal Investigation, which sent several agents to Hamilton County to investigate the casting of absentee ballots. A suit was filed in the circuit court of Hamilton County, captioned Illinois State Board of Elections and Alan Downen v. Lovella Craddock. This suit, against the county clerk of Hamilton County, sought impoundment of the absentee ballots. Those ballots were still under impoundment at the time of the hearing on the instant petition.

In February 1983, the respondent filed a petition with the circuit court to convene a grand jury. One of the areas of investigation by this grand jury was to be the alleged voting irregularities. That grand jury was scheduled to meet on April 18, 1983. This litigation began with the filing of a petition by certain voters and residents of Hamilton County on April 11. The petitioners averred that the respondent was "interested in any cause of [sic] proceedings, civil or criminal, which may arise concerning the General Election held November 2, 1982," and requested the appointment of a special prosecutor pursuant to section 6 of "An Act in regard to attorneys general and state's attorneys" (Ill. Rev. Stat. 1981, ch. 14, par. 6).

■ The respondent asserts that the petition was insufficient as a matter of law, for it did not identify a pending cause of action from which he could have been disqualified. While section 6 (Ill. Rev. Stat. 1981, ch. 14, par. 6) only refers to the appointment of special prosecutors in pending cases, this does not mean that the circuit court is limited to those circumstances in appointing a prosecutor. These principles are explained in In re Appointment of Special State's Attorneys (1976), 42 Ill. App. 3d 176, 356 N.E.2d 195, and Wilson v. County of Marshall (1930), 257 Ill. App. 220, and there is no need to repeat them here.

Section 6 of "An Act in regard to attorneys general and state's attorneys" authorizes the appointment of a special prosecutor if the State's Attorney "is interested in any cause or proceeding, civil or criminal, which it is or may be his duty to prosecute or defend." (Ill. Rev. Stat. 1981, ch. 14, par. 6.) The petition filed in these proceedings lists two categories of conflicts which, it is asserted, preclude the respondent from calling for the grand jury investigation into the alleged voting irregularities. First, the petitioners contended, and the court so found, that the statutory duty of the respondent to give legal advice to county officials such as the county clerk (Ill. Rev. Stat. 1981, ch. 14, par. 5) gave rise to an attorney-client relationship between the

respondent and the clerk, and thus to a conflict of interest. Second, the petitioners referred to certain irregularities in the absentee ballots cast by the respondent's grandmother and ex-wife. This category of allegations was not mentioned in the court's order.

We cannot agree that the respondent's capacity as advisor to the county clerk gives rise to a conflict of interest requiring the appointment of a special prosecutor. In *In re Grand Jury Investigation of Swan* (1981), 92 Ill. App. 3d 856, 415 N.E.2d 1354, it was held that a State's Attorney was not disqualified from investigating alleged misconduct involving a township official merely because the State's Attorney represented that official in several pending suits, in the State's Attorney's capacity as attorney for the county board. To disqualify the State's Attorney from conducting such an investigation would "require the appointment of a special prosecutor in every investigation of official misconduct involving county officials." (*In re Grand Jury Investigation of Swan* (1981), 92 Ill. App. 3d 856, 863, 415 N.E.2d 1354, 1360.) The *Swan* court rejected such a result, and so do we.

Nor have the petitioners produced specific evidence which would establish that the respondent's convening of a grand jury to investigate a subject which might involve the county clerk would present a conflict of interest. Both the respondent and Ms. Craddock, the county clerk, testified that they had had discussions concerning the conduct of the general election, but neither could recall the exact times or subjects of those conversations. The respondent stated that he had probably talked about the absentee ballots with Ms. Craddock some time after he was contacted by the State Board of Elections. However, as the respondent correctly maintains, this evidence shows no more than that he was fulfilling his statutory duty to provide legal advice to county officials. As such, no conflict has been established, according to *Swan*. See also *Environmental Protection Agency v. Pollution Control Board* (1977), 69 Ill. 2d 394, 372 N.E.2d 50.

Furthermore, the existence of the impoundment suit fails to present a conflict of interest. This action neither renders him interested in the outcome of an investigation as a private individual, nor places him in the status of a party to any action arising from an investigation, except in his capacity as a prosecutor. (*People v. Trolia* (1982), 107 Ill. App. 3d 487, 437 N.E.2d 804, *cert. denied* (1983), ____ U.S. ____, 75 L. Ed. 2d 798, 103 S. Ct. 1442; *People v. Lynn* (1980), 89 Ill. App. 3d 712, 412 N.E.2d 15.) The impoundment suit is merely an adjunct to the investigation of the Department of Criminal Investigation and was designed to facilitate the grand jury proceedings. It

would be incongruous to create a conflict of interest due to a State's Attorney's filing of an action against county officials in order to preserve evidence. To the extent that the trial court held otherwise, and found a conflict of interest arising from the respondent's connections with the county clerk, it was in error.

Finally, the evidence presented at the hearing on the petition did not support the petitioners' claims that actions taken on the absentee ballots cast by the respondent's grandmother and ex-wife made the respondent personally interested in the proposed grand jury investigation. The petitioners did introduce testimony which showed that the absentee ballot of the respondent's grandmother, Ethel Downen, was disallowed because the signature on the ballot did not match the official handwriting exemplar. Curtis Downen, the respondent's father, stated at the hearing on the petition that Ethel Downen was 94 years old and occasionally had difficulty writing. He transacted business for her pursuant to a written power of attorney. When Ethel Downen voted in the 1982 general election, Curtis Downen was present. They discussed the candidates, and then Curtis marked the ballot as Ethel had indicated, signed it and mailed it to the county clerk's office. That day, Ethel Downen was unable to sign her own name.

At the hearing, the petitioners presented no evidence relating to the absentee ballot cast by the respondent's ex-wife, Ava Downen. However, in the petition, it was alleged that "there is reason to believe" that, at the time she voted, she was not a *bona fide* resident at the address listed on her absentee ballot application. Ava Downen testified that her divorce from the respondent became final in August and September of 1982, and in late August or early September, she moved to the house of her mother, in DuQuoin. After moving to DuQuoin, Ava Downen did not live at the respondent's McLeansboro address for any period of time. Nonetheless, she testified that even after the divorce became final, she intended to return and reside at that address, if she and the respondent were able to "work things out." To that end, she and the respondent were still seeing a marriage counselor in late October. Ava Downen stated that the last of her personal possessions were removed from the respondent's home in December 1982.

■ These facts do not give rise to a conflict of interest on the part of the respondent. The possibility that any investigation into alleged voting irregularities would disclose wrongdoing on the part of Ethel Downen or Ava Downen is extremely speculative, in view of the evidence introduced by the respondent at the hearing on the petition. A special prosecutor may not be appointed solely because of the suspi-

34

cions or speculations of the petitioners (*People ex rel. Baughman v. Eaton* (1974), 24 Ill. App. 3d 833, 321 N.E.2d 531), and the allegations concerning the respondent's grandmother and ex-wife are simply that.

In conclusion, we hold that neither the respondent's connections with the county clerk nor the ballots cast by his grandmother and ex-wife provide grounds for the appointment of a special prosecutor. Any other allegations in the petition were entirely unsupported by evidence at the hearing. The respondent was doing nothing but pursuing his duties in a proper manner. For these reasons, the circuit court of Hamilton County abused its discretion in granting the relief requested by the petitioners. Accordingly, the order of that court appointing the Attorney General as special prosecutor is reversed, and the injunction against the respondent's conducting an investigation is dissolved.

Order reversed; injunction dissolved.

HARRISON, P.J., and KARNS, J., concur.