THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID T. MORLEY, Defendant-Appellant.

Second District No. 2—94—1383

Opinion filed March 13, 1997.—Rehearing denied May 16, 1997.

500

G. Joseph Weller and Steven E. Wiltgen, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HUTCHINSON delivered the opinion of the court:

Following a jury trial in the circuit court of Lake County, defendant, David Morley, was found guilty of two counts of attempted first-degree murder, two counts of aggravated discharge of a firearm, one count of armed violence, and one count of aggravated battery with a firearm. The charges against defendant stemmed from his involvement in a shoot-out on May 7, 1991, with two Round Lake Beach police officers, one of whom, Detective David Ostertag, was struck by a bullet and seriously wounded. Defendant was sentenced

to an extended term of 50 years' imprisonment for the attempted murder of Detective Ostertag to run consecutively to a sentence of 30 years' imprisonment for the attempted murder of the other officer, Detective Gary Bitler.

An appeal was taken, and this court reversed defendant's convictions and remanded the cause for a new trial. See *People v. Morley*, 255 Ill. App. 3d 589 (1994). A new jury trial ensued on the same charges in September 1994 and concluded with guilty verdicts on all of the charged offenses. Defendant was sentenced to 50 years' imprisonment on one count of attempted first-degree murder to be served consecutively to a 30-year term on the other attempt count. Defendant was also sentenced to 30 years' imprisonment on one count of aggravated discharge of a firearm to be served concurrently with a 15-year term on the other discharge count and concurrently with the other two attempt convictions. No sentence was entered on the armed violence count or the count charging aggravated battery with a firearm.

In this appeal, defendant raises the following issues: (1) whether the trial court improperly refused defendant's request to appoint a special prosecutor; (2) whether the trial court improperly refused to allow defendant to impeach two witnesses by omission; (3) whether the impeachment of a defense witness with his convictions of the same offenses as those for which defendant stood trial was improper; (4) whether the trial court erred in its refusal to instruct the jury on the defense of mistake of fact; (5) whether the content of the prosecutor's closing argument deprived defendant of a fair trial; and (6) whether the trial court erred in finding the attempted murder of Detective Ostertag to have been accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty, thus improperly imposing an extended term of imprisonment upon defendant. We affirm.

The facts of this case are set out in *People v. Morley*, 255 Ill. App. 3d 589 (1994). The following supplemental facts are provided to address the issues relevant to this appeal.

On September 22, 1994, arguments were heard on defendant's motion for the appointment of a special prosecutor. The motion alleged, *inter alia*, that, after the appellate court reversed defendant's conviction, the prosecutor at defendant's first trial (and the prosecutor assigned to conduct the retrial), Steven McCollum, had a leading role in the decision to employ Ostertag as an investigator in the State's Attorney's office. Ostertag was a Round Lake Beach police officer at the time of the alleged offenses and was shot following a high-speed chase involving defendant and James Files. The motion sought an order to disqualify the State's Attorney's office.

McCollum, the chief deputy State's Attorney for Lake County, testified that he was one of two assistant State's Attorneys who were assigned to prosecute defendant in the first trial. McCollum is on the hiring committee for attorneys and investigators; the committee evaluates and recommends individuals for hiring to Michael Waller, the Lake County State's Attorney, who makes the final hiring decision. McCollum's duties include assigning cases to the investigators and supervising their performance.

McCollum testified that he prepared Ostertag for defendant's trial because Ostertag was the victim. McCollum specifically indicated to Ostertag that he should not be involved in any capacity other than as a victim. McCollum instructed Ostertag not to investigate or serve subpoenas. McCollum testified that Ostertag approached him with information received during a telephone call from a man named Bob Vernon, who wanted to provide information regarding James Files' alleged involvement in the assassination of President Kennedy. McCollum testified that Ostertag conducted no other investigation into the case.

On cross-examination, McCollum testified that the office of the State's Attorney decided to reprosecute defendant after the appellate court reversed defendant's conviction. He further testified that the decision to prosecute defendant was not based upon any personal relationship that McCollum had with Ostertag.

Ostertag testified that he was a special investigator in the State's Attorney's office and had been employed as such for the past 10 weeks. Prior to that he was an officer with the Round Lake Beach police department. Ostertag's immediate supervisor at the State's Attorney's office is George Strickland, but he also works at the direction of McCollum. Ostertag testified that at McCollum's request he contacted witnesses for new addresses. Prior to his employment with the State's Attorney's office, Vernon contacted Ostertag with his claims of Files' involvement with the Kennedy assassination. Ostertag testified that he apprised McCollum of his discussions with Vernon and that McCollum never told him to cease gathering information from Vernon. McCollum told him, however, not to serve subpoenas, and Ostertag did not talk to witnesses about their anticipated testimony. Ostertag, on his own, requested federal "rap" sheets for defendant and Files.

Following argument of counsel, the trial court denied defendant's motion, stating that no conflict existed at the time of the first trial and nothing presented in the motion hearing convinced it that a conflict existed as this second trial approached. Furthermore, the trial court stated that should Ostertag's testimony deviate from his

original testimony, the defense could attempt to impeach him. Therefore, no harm would result even if a conflict was to be determined.

Defendant was tried before a jury on September 26-29, 1994.

The jury returned verdicts finding defendant guilty of two counts of attempted first-degree murder, two counts of aggravated discharge of a firearm, one count of armed violence, and one count of aggravated battery with a firearm.

At a post-trial hearing on November 21, 1994, defendant's motion for a new trial was denied, and the cause proceeded to sentencing. Following arguments, in stating that defendant's conduct was brutal and heinous and indicative of wanton cruelty and in considering defendant's prior convictions and criminal history, the trial court imposed an extended-term sentence of 50 years' imprisonment as to the attempted murder of Ostertag, to be served consecutively to a 30-year term as to the same charge in reference to Bitler. A 30-year extended term was imposed for the offense of aggravated discharge of a weapon (Ostertag), to be served concurrently with a 15-year term on the same offense with regard to Bitler. No sentence was entered for the offenses of armed violence or aggravated battery with a firearm.

On November 23, 1994, defendant's motion for reconsideration of sentence was denied. Defendant timely appeals.

Defendant first contends that his motion for appointment of a special prosecutor should have been granted. The basis of defendant's motion is that the victim, Ostertag, was recommended for employment in the State's Attorney's office by the prosecutor, McCollum, and was subsequently hired as an employee of the State's Attorney's office. Therefore, defendant argues, a reasonable possibility existed that the prosecution would not exercise its discretionary power in an even-handed manner. The State argues that Ostertag was the victim and did not perform employee functions in this case.

■ Article VI, section 19, of the Illinois Constitution provides for the election of a State's Attorney in each county. Ill. Const. 1970, art. VI, § 19. The powers and duties of a State's Attorney include commencing and prosecuting all actions, civil and criminal, in which the people of the state may be concerned. 55 ILCS Ann. 5/3—9005 (Smith-Hurd Supp. 1996). However, when a State's Attorney is *interested* in any cause or proceeding, civil or criminal, which it is or may be her or his duty to prosecute, the court may appoint some other competent attorney to prosecute such cause or proceeding. 55 ILCS 5/3—9008 (West 1994). The purpose of this provision is to prevent any influence upon the discharge of the duties of the State's Attorney by reason of

personal interest. See *People ex rel. Hutchison v. Hickman*, 294 Ill. 471 (1920). The decision to appoint a special prosecutor rests with the discretion of the trial court. *People v. Polonowski*, 258 Ill. App. 3d 497, 503 (1994). A special prosecutor can be appointed at any stage of the case. *Baxter v. Peterlin*, 156 Ill. App. 3d 564, 566 (1987).

■ The conflict asserted here is based on McCollum's professional relationship with Ostertag. Initially, we note that the trial court clearly had the discretion either to appoint or deny the appointment of a special prosecutor. The issue thus becomes whether McCollum was "interested" within the scope of the statute. The State denies that McCollum was "interested" or had a conflict of interest as such. Our supreme court has held that the only situations in which the Attorney General or the State's Attorney could be considered to be interested so as to authorize the appointment of a special Attorney General or State's Attorney are where (1) she or he is interested as a private individual; or (2) she or he is an actual party to the litigation. *Environmental Protection Agency v. Pollution Control Board*, 69 Ill. 2d 394, 400-01 (1977); see also *Suburban Cook County Regional Office of Education v. Cook County Board*, 282 Ill. App. 3d 560, 569 (1996).

Defendant also cites *People v. Lewis*, 88 Ill. 2d 429 (1981), and *People v. Polonowski*, 258 Ill. App. 3d 497 (1994), for support. However, the *Lewis* and *Polonowski* holdings are limited to conflicts based on counsel's personal relationships. Because defendant contends that McCollum's conflict is based on a professional relationship with a witness, and not a personal relationship, we decline to analyze under the *Lewis* and *Polonowski* line of cases. Furthermore, neither of these cases imposed a *per se* rule that required the disqualification of counsel on the basis of an acquaintance with a witness.

■ In the instant case, McCollum is not an actual party, nor does the record support a finding that McCollum has a private individual interest in the litigation. The words that McCollum used to describe Ostertag, a "very nice man," a "colleague," and a "very good and professional police officer," do not rise to the level of a personal interest. *Cf. Baxter v. Peterlin*, 156 Ill. App. 3d 564 (1987). Further, at the pretrial hearing, Ostertag testified that he had been employed at the State's Attorney's office for approximately 10 weeks; he only checked the current addresses of some of the witnesses; he did not discuss their testimony with them; he did not interview them; he did not serve any subpoenas; he made no diagrams; and he did not handle any physical evidence. Regarding the communications between Ostertag and Vernon, Ostertag testified that it was Vernon who initially contacted him regarding Files' involvement with the Kennedy assas-

sination, and this was done prior to his employment with the State's Attorney's office.

The State's Attorney's responsibilities are not limited to representing the people of the state who are not employed by the State of Illinois or some other governmental entity. These prosecutorial responsibilities will occasionally include prosecuting cases where victims and witnesses are employed by a state, county, or local agency, including, but not limited to, the State's Attorney's office. Furthermore, the State's Attorney does not represent individuals or specific witnesses during the course of criminal prosecutions. Criminal prosecutions are commenced in the name of and on behalf of the people of the State of Illinois. To hold that a special prosecutor must always be appointed whenever a victim or witness is employed by a state, county, or local agency would be an illogical, as well as impractical, encroachment upon the authority of a constitutional officer. Accordingly, we hold that the trial court did not abuse its discretion in denying defendant's motion for the appointment of a special prosecutor.

For the foregoing reasons, defendant's convictions and sentence are affirmed.

Affirmed.

GEIGER, P.J., and INGLIS, J., concur.