*In re* RYAN HARRIS, Deceased, *et al.* (E.H., a Minor, By and Through Rosetta Crawford, His Maternal Grandmother, and Sonya Crawford, Mother of E.H., Petitioner-Appellant, v. Richard Devine, State's Attorney of Cook County, Illinois, Respondent and Intervenor-Appellee).

First District (2nd Division)   No. 1—00—1394

Opinion filed November 26, 2002.

518

Andre Grant, Berve Power, Lewis Meyers, and R. Eugene Pincham, all of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Veronica Calderon Malavia, Assistant State's Attorneys, of counsel), for appellee.

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

On March 24, 1999, petitioner, E.H., by and through his maternal grandmother, Rosetta Crawford, and his mother, Sonya Crawford, filed a petition for the appointment of a special prosecutor and other relief

to investigate and prosecute Chicago police detectives Allen Nathaniel and James Cassidy for criminal misconduct allegedly committed during their investigation of the sexual assault and murder of Ryan Harris. The petition alleges that Nathaniel and Cassidy concocted, fabricated, framed and created false evidence which implicated 8-year-old E.H. and 7-year-old R.G. in the sexual assault and murder of 11-year-old Ryan Harris. The petition alleges that on August 10, 1998, Nathaniel perjured himself during his testimony at the probable cause hearing in juvenile court. The petition further states that Detective Cassidy has a brother, Scott Cassidy, who is an assistant State's Attorney and holds the position of supervisor of the Organized Crime Division of the Cook County State's Attorney's office. Petitioner argues this created a conflict of interest between the State's Attorney's office and the Chicago police department. The petition also alleges impropriety in the investigation, charging and prosecution of the Anna Gilvis home invasion and murder and the Donald Rudolph and Connie Hall murders. As the Gilvis, Rudolph and Hall allegations are not before this court on this appeal, they will not be addressed. Cook County State's Attorney Richard A. Devine was allowed to intervene as respondent and on April 7, 1999, filed an objection to the petition for the appointment of a special prosecutor.

On July 27, 1999, petitioner filed an amended petition for the appointment of a special prosecutor. In this amended petition, petitioner alleges Assistant State's Attorney Michael Oppenheimer conspired with Detectives Nathaniel and Cassidy to concoct, fabricate, frame and create false and perjured evidence to implicate E.H. and R.G. in the sexual assault and murder of Ryan Harris. Specifically, petitioner alleges that Oppenheimer induced Nathaniel to testify perjuriously at the August 10, 1998, hearing and unlawfully withheld favorable evidence and facts from E.H., R.G. and their attorneys that exculpated and established that E.H. and R.G. were not in any way involved in the crimes against Harris.

On November 23, 1999, respondent filed a motion pursuant to section 2—615(e) of the Code of Civil Procedure (735 ILCS 5/2—615(e) (West 1998)) for judgment on the pleadings. On January 12, 2000, petitioner filed an answer to respondent's motion. After a hearing on the motion on March 13, 2000, the trial court granted respondent's motion for judgment on the pleadings. The trial court filed a written memorandum of opinion and order on March 23, 2000. This appeal followed.

On appeal, petitioner argues that the trial court erroneously granted respondent's motion for judgment on the pleadings. Specifically, he argues his petition was sufficient to establish a cause of action

for the appointment of a special prosecutor arguing respondent had a conflict of interest that prohibited respondent from investigating charges petitioner filed against certain police officers and respondent's employee.

■ Section 2—615(e) allows any party to move for judgment on the pleadings. 735 ILCS 5/2—615(e) (West 1998). The purpose of a motion for judgment on the pleadings is to test the sufficiency of the pleadings by determining whether the petitioner is entitled to the relief sought. *Teeple v. Hunziker*, 118 Ill. App. 3d 492, 496, 454 N.E.2d 1174 (1983); *Tim Thompson, Inc. v. Village of Hinsdale*, 247 Ill. App. 3d 863, 890, 617 N.E.2d 1227 (1993). It concedes all well-pleaded facts set forth in the pleading and draws all fair inferences therefrom. *Richco Plastic Co. v. IMS Co.*, 288 Ill. App. 3d 782, 786, 681 N.E.2d 56 (1997). Moreover, in determining the sufficiency of any claim, the court will disregard any conclusions that are not supported by allegations of specific facts. *Richco Plastic Co.*, 288 Ill. App. 3d at 784. "On review of an order granting judgment on the pleadings, the appellate court must ascertain whether the trial court correctly determined that no genuine issue as to any material fact was presented by the pleadings and, if there was no such issue, whether judgment was correctly entered." *Teeple*, 118 Ill. App. 3d at 497. We review the trial court's dismissal of the pleadings *de novo*. *Richco Plastic Co.*, 288 Ill. App. 3d at 785.

■ Petitioner argues that his petition and amended petition sufficiently established a cause of action for the appointment of a special prosecutor. Pursuant to section 3—9005 of the Counties Code, the State's Attorney has the power and duty to prosecute all actions brought by any county officer and to defend all actions brought against his county or against any county or state officer. 55 ILCS 5/3—9005 (West 1998). Additionally, the statute allows for the appointment of a special prosecutor in certain circumstances:

> "Whenever the State's attorney is sick or absent, or unable to attend, or is interested in any cause or proceeding, civil or criminal, which it is or may be his duty to prosecute or defend, the court in which said cause or proceeding is pending may appoint some competent attorney to prosecute or defend such cause or proceeding ***." 55 ILCS 5/3—9008 (West 1998).

The purpose of this statute is to "prevent any influence upon the discharge of the duties of the State's Attorney by reason of personal interest." *People v. Morley*, 287 Ill. App. 3d 499, 503-04, 678 N.E.2d 1235 (1997). The decision to appoint a special prosecutor is within the discretion of the trial court. *People v. Arrington*, 297 Ill. App. 3d 1, 3, 696 N.E.2d 1229 (1998). In the present case, the decision rests upon

the word "interested" as used in section 3—9008. The Illinois Supreme Court has held that the only situations in which the State's Attorney could be considered "interested" so as to authorize the appointment of a special prosecutor are where (1) he or she is interested as a private individual; or (2) he or she is an actual party to the litigation. *Environmental Protection Agency v. Pollution Control Board*, 69 Ill. 2d 394, 400-01, 372 N.E.2d 50 (1977); *Morley*, 287 Ill. App. 3d at 504.

The record below reveals the following facts. On July 28, 1998, around 3 p.m., the body of 11-year-old Ryan Harris was found in a rear yard on South Parnell Avenue. According to the medical examiner, Harris died from blunt trauma to her head and asphyxiation. When Harris's body was found, a pair of girl's underwear was stuffed in her mouth and there was foliage and leaves in her nose. The medical examiner also noted a half-inch gash to her vagina. On August 9, 1998, Detective Nathaniel spoke with eight-year-old E.H. and seven-year-old R.G. The detective spoke first with R.G. after obtaining permission to speak with him from his grandmother. R.G. told the detective that he and E.H. were playing with Harris in the rear of 6636 South Parnell Avenue. E.H. and R.G. were throwing rocks back and forth and Harris was on a bicycle. R.G. hit Harris in the back of the head with a rock which caused Harris to fall off her bike. R.G. and E.H. moved Harris's bike to a wooded area behind the building. E.H. and R.G. then each took an arm and dragged Ryan into the same wooded area. R.G. told the detective that they then began to "play with [Harris] very softly." R.G. began rubbing leaves and foliage over Harris's body and placed leaves and stems in her nose. R.G. and E.H. pulled down Harris's pants and underwear. R.G. placed Harris's underwear in her mouth. R.G. told the detective that after it got dark, R.G. and E.H. went to R.G.'s grandmother's home to play with puppies. After this conversation, the detective explained to R.G. his *Miranda* rights and called two youth officers into the room. R.G. repeated essentially the same story with the two youth officers present.

After speaking with R.G. about the incident, Detective Nathaniel spoke with E.H.'s mother. She allowed her son to be interviewed by the police. After having his rights explained to him, E.H. told the detective that he and R.G. were throwing rocks and R.G. hit Harris in the back of the head with a rock. E.H. said that once Harris was on the ground, R.G. started playing with her body. After E.H. saw R.G. playing with Harris's body, E.H. got on his bike, rode home and watched cartoons. E.H. essentially repeated his account of what happened in the presence of a youth officer. Thereafter, both boys were remanded into juvenile custody and charged in delinquent petitions with first degree murder.

On September 4, 1998, after receiving additional physical evidence relating to the investigation, the State entered a *nolle prosequi* against both R.G. and E.H.

Petitioner contends that the trial court abused its discretion when it failed to appoint a special prosecutor to investigate the charges he raised against Nathaniel and Cassidy. Petitioner maintains that Nathaniel and Cassidy fabricated confessions from E.H. and R.G. and that Nathaniel presented false testimony at the probable cause hearing. However, petitioner fails to present this court with any specific facts or circumstances to show that the conduct of Nathaniel and Cassidy throughout the Ryan Harris criminal investigation would warrant or require the appointment of a special prosecutor. Additionally, petitioner has not provided this court with case law to support his contention.

Petitioner argues more specifically that the familial relationship between Detective Cassidy and Scott Cassidy creates a conflict of interest. Scott Cassidy is the supervisor of the Organized Crime Division of the Cook County State's Attorney's office. As noted by the State, in this capacity, Scott Cassidy would have no involvement in any investigation or prosecution of misconduct relating to the Ryan Harris sexual assault and murder. The State asserts and the petitioner concedes that as with all investigations of this nature, the Harris investigation would be handled by the Public Integrity Unit of the State's Attorney's office. We do not find that the allegation of the relationship between an investigating officer and one employee of the State's Attorney's office would create a situation that would require the appointment of a special prosecutor as a matter of law.

In *Baxter v. Peterlin*, 156 Ill. App. 3d 564, 509 N.E.2d 156 (1987), this court noted that before a trial court is required to appoint a special prosecutor due to a conflict of interest, the petitioner must "plead and prove specific facts regarding the nature of the alliance as well as facts tending to show the State's Attorney would not zealously represent the People of the State of Illinois because of this alliance." *Baxter*, 156 Ill. App. 3d at 566. Other than conclusory allegations regarding one employee in the State's Attorney's office, petitioner has failed to provide this court with specific facts regarding the nature of the alliance between the State's Attorney and Detective Cassidy that would mandate a special prosecutor.

Petitioner further argues that the State's Attorney has an "interest" in the investigation and prosecution of petitioner's charges against Assistant State's Attorney Michael Oppenheimer. In his brief, petitioner contends that the State's Attorney may be called as a witness and that this possibility necessitates the appointment of a special

prosecutor. In support of his argument, petitioner cites *McDonald v. County Board*, 146 Ill. App. 3d 1051, 497 N.E.2d 509 (1986), and *Sommer v. Goetze*, 102 Ill. App. 3d 117, 429 N.E.2d 901 (1981). In *McDonald*, the sheriff of Kendall County sued the county board of Kendall County for money from the "investigations" budget that was designated for the State's Attorney's operations and not the sheriff's operations. McDonald also sought the appointment of a special prosecutor; this motion was denied by the trial court. The appellate court held that the State's Attorney, while not a party to the litigation, had a personal interest in the suit as it arose out of a direct controversy between the sheriff and the State's Attorney concerning formerly shared resources. Additionally, the probability of the State's Attorney being called as a witness was great and the State's Attorney himself filed a petition for the appointment of a special State's Attorney for the Kendall County Board, stating that such an appointment was necessary because the State's Attorney was "interested" in the litigation. *McDonald*, 146 Ill. App. 3d at 1056-57. In *Sommer*, a Tazewell County deputy sheriff was dismissed from his position with the sheriff's office stemming from a heated argument between himself and an assistant State's Attorney at an East Peoria tavern. There, the court held that the trial court abused its discretion in refusing to appoint a special prosecutor where the assistant State's Attorney was the complainant and key eyewitness.

Like *McDonald*, here the State's Attorney is not a party to the litigation. Unlike *McDonald*, we do not find that the State's Attorney has a personal interest in the litigation. Furthermore, petitioner has provided this court with no argument to find the contrary. *Sommer* is also easily distinguishable from the instant case, as the complainant in *Sommer* that instigated the entire litigation was an assistant State's Attorney.

In *People v. Arrington*, 297 Ill. App. 3d 1, 3, 696 N.E.2d 1229 (1998), the defendant argued that the trial court erred in declining to appoint a special prosecutor in his case. There, the defendant was charged with attempted robbery and aggravated battery when he attempted to rob a grocery store and hit the manager of the store over the head with a nonfunctioning replica of a pistol. The facts revealed that the State's Attorney was "interested" in the action because his cousins owned the store that the defendant attempted to rob. *Arrington*, 297 Ill. App. 3d at 2-4. In its analysis, the appellate court noted that the test to determine whether to appoint a special prosecutor depends upon whether the nature of the interest is personal. The court stated that when the alleged interest in question is personal, a defendant "must show either (1) that the relationship involves

significant emotional ties; or (2) that defendant suffered 'actual and substantial prejudice.' [Citations]." *Arrington*, 297 Ill. App. 3d at 3-4. The court found no "*per se*" conflict of interest and stated that the defendant had failed to present any evidence that the relationship between the store owner and the State's Attorney involved such emotional ties that the State's Attorney's personal interests influenced the discharge of his duties. The court also found that the defendant presented no evidence that the alleged interest caused him actual and substantial prejudice. *Arrington*, 297 Ill. App. 3d at 4. In the instant case, the petitioner has not provided, and the record does not support, any allegation of "significant emotional ties" that would prevent the State's Attorney from discharging his duties. Additionally, in his brief, the petitioner has failed to provide this court with any allegations of actual and substantial prejudice stemming from the trial court's denial of his request for a special prosecutor. Moreover, we find that this lack of actual and substantial prejudice is reinforced by the fact that the charges against both E.H. and R.G. were dismissed.

We find that *People ex rel. York v. Downen*, 119 Ill. App. 3d 29, 456 N.E.2d 286 (1983), is persuasive. Alan Downen, the State's Attorney for Hamilton County, sought to conduct a grand jury investigation into election irregularities involving absentee ballots. The trial court appointed a special prosecutor for the purposes of conducting such an investigation. The petitioner argued, *inter alia*, that the State's Attorney's capacity as advisor to the county clerk and the absentee ballots cast by the State's Attorney's grandmother and ex-wife created a conflict of interest and made him personally interested. The appellate court disagreed and stated that the petitioner had failed to produce specific evidence that would have given rise to a conflict of interest on the part of the respondent. The reviewing court reversed the trial court's decision and noted: "A special prosecutor may not be appointed solely because of the suspicions or speculations of the petitioners." *Downen*, 119 Ill. App. 3d at 33-34.

In *In re Grand Jury Investigation of Swan*, 92 Ill. App. 3d 856, 415 N.E.2d 1354 (1981), the issue of the appointment of a special prosecutor was also addressed. There, Swan was found guilty of contempt for refusing to obey a trial court order that he comply with a grand jury subpoena. Swan contended at the trial level that a special prosecutor should have been appointed because of a conflict of interest. Swan alleged that the State's Attorney had represented him in his capacity as a supervisor of York Township and as a member of the county board, and that he was still being represented in several pending suits. Swan argued that the conflict of interest stemmed from being investigated by the State's Attorney who represented him (Swan)

in his official capacity. This court noted that to adopt Swan's position "would be to require the appointment of a special prosecutor in every investigation of official misconduct involving county officials. \*\*\* Since [petitioner] failed to produce any evidence of a specific conflict of interest, his argument is without merit." *In re Grand Jury Investigation of Swan*, 92 Ill. App. 3d at 863. Likewise, we find that here petitioner has failed to allege any specific facts of a specific conflict. We note, as the State and trial court noted below, that Michael Oppenheimer is one of 900 assistant State's Attorneys. There are no facts to suggest that Oppenheimer's employment as an assistant State's Attorney would hinder any investigation the Public Integrity Unit may conduct regarding the petitioner's claims. Importantly, we agree with the court's reasoning in *Swan* that if we adopted the petitioner's position here, we would create a climate whereby the appointment of a special prosecutor would be required in every situation where an allegation of misconduct on the part of the investigating officers or the assistant State's Attorneys is made. We also note that some of the allegations presented in the petition are similar to allegations routinely made in motions to suppress evidence and motions to quash arrest. Moreover, we do not believe that the argument advanced by the petitioner supports the intent behind the statute or the guidance provided by case law and we, therefore, decline to expand the law to the degree set forth by the petitioner.

In support of our holding, we echo the trial court's statement:

> "Disqualification of a duly elected State's Attorney must not be taken lightly, for in essence such action disenfranchises the very electorate who in its wisdom has selected that person for public office. The Office of the State's Attorney is an office of constitutional dimension reposing in the executive branch of government, co-equal to the legislature as well as the judiciary. Although the legislature has empowered judges to effect the removal of the State's Attorney in certain limited situations, respect for the doctrine of separation of powers militates against the exercise of such power unless clearly warranted. Petitioner[ ] has failed to provide such a basis here."

■ We agree with the trial court. We cannot say that the State's Attorney in the present case was "interested" in the litigation for purposes of the statute governing the appointment of a special prosecutor. The State's Attorney was not a party to the litigation nor was he interested as a private individual. Petitioner has failed to plead any facts which show that the State's Attorney had "significant emotional ties." Petitioner has also failed to plead facts that show he suffered "actual and substantial prejudice." Our *de novo* review of the amended

petition reveals that many if not most of the allegations contain conclusions unsupported by specific facts. Therefore, we affirm the decision of the trial court.

Affirmed.

GORDON and CAHILL, JJ., concur.