FIFTH DIVISION

         August 30, 2002 

No. 1-01-0182

PATSY McCALL,

Petitioner-Appellant,

v.

RICHARD A. DEVINE, Cook County

State's Attorney, 

Respondent-Appellee.

))))) ))))

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Michael A. Toomin,

Judge Presiding.

JUSTICE QUINN delivered the opinion of the court:

On February 8, 2000, petitioner, Patsy McCall, filed a petition for the appointment of a special prosecutor to investigate and prosecute unknown Chicago police officers for the fatal shooting death of her son, Reginald Cole.  Cole was in the custody of the Chicago police department when the shooting occurred.  Cook County State's Attorney Richard A. Devine filed a motion for leave to intervene, which was granted by the trial court over McCall's objections. Devine then filed a motion for judgment on the pleadings.  Following argument by the parties, the trial court entered an 18-page order granting Devine's motion and ordering judgment on the pleadings and dismissed the petition for appointment of a special prosecutor.

McCall now appeals.  On appeal, McCall argues that the trial court erroneously granted the motion for judgment on the pleadings where the petition established a cause of action for the appointment of a special prosecutor.  McCall argues that Devine's relationship with the Chicago police department has created a conflict of interest that prohibits Devine from conducting a fair and impartial investigation and prosecution of the officers.

For the reasons that follow, we affirm.

I.  BACKGROUND

On October 30, 1999, Reginald Cole was transferred from the Illinois River Correctional Facility in Canton, Illinois, to the Chicago police Area One facility located at 5101 South Wentworth Avenue in Chicago.  At that time, Cole was in the custody of the Illinois Department of Corrections serving a 10-year sentence for armed robbery.  Cole was transported to Area One to be questioned in connection with an ongoing homicide investigation.  Within hours of his arrival
, Cole died as a result of gunshot wounds suffered while in the custody of Chicago police officers at Area One.  Both the Cook County State's Attorney's office and the Cook County medical examiner's office began investigating the incident on the evening Cole died.

On October 31, 1999, the medical examiner issued a report which stated that Cole sustained three gunshot wounds: one to the abdomen, one to the right arm and one to the mouth.  The report concluded that Cole died as a result of a self-inflicted gunshot wound to the mouth.  The State's Attorney's office similarly concluded that Cole's death was not a homicide and determined that no charges would be filed against any officers involved in the incident. 

On February 8, 2000, Patsy McCall, Cole's mother, filed a petition for the appointment of a special prosecutor to investigate and criminally prosecute the unknown officers involved in the shooting death of her son.  McCall's claim for relief is based upon section 3-9008 of the Counties Code (55 ILCS 5/3-9008 (West 2000)) which provides:

"Whenever the State's [A]ttorney is sick or absent, or unable to attend, or is interested in any cause or proceeding, civil or criminal, which it is or may be his duty to prosecute or defend, the court in which said cause or proceeding is pending may appoint some competent attorney to prosecute or defend such cause or proceeding

***" 55 ILCS 5/3-9008 (West 2000).

McCall's petition alleges that there are gross conflicts of interest in the State's Attorney investigating and prosecuting officers in the Chicago police department for Cole's death.  Specifically, McCall alleged that the State's Attorney and the Chicago police department have a relationship of "cordiality, compatibility, support, [and] fidelity" and that this relationship makes it impossible for the State's Attorney's office to conduct an "independent, unbiased, honest and impartial investigation into the shooting death of Reginald Cole."  The petition stated that this relationship has formed as a result of the fact that "well over 90% of the criminal cases prosecuted by the Cook County State's Attorney's office have been investigated and brought to the Cook County State's Attorney's office by Chicago police officers."

Additionally, McCall's petition alleged that certain unknown Chicago police officers, assistant State's Attorneys and medical examiners conspired to conceal, distort and fabricate the circumstances surrounding Cole's death.  In support of that claim, McCall asserts that Cook County assistant State's Attorneys and Cook County medical examiners are not normally called to the scene of a homicide to investigate, and it is not their duty or responsibility to investigate the facts and circumstances surrounding a homicide.  

The petition also states that representatives of the Chicago police department publicly provided false and contradictory factual versions of these circumstances.  In support of that assertion, McCall cites to five Chicago Tribune articles and commentaries.  The alleged versions were summarized by the trial court as follows:

"In the first version, set forth in the commentary of Salim Muwakkil, November 8, 1999, the writer notes that first accounts of the incident reported 'that the 38 year old Cole was shot by officers when he allegedly attacked them during a mysterious October 30 interrogation at the Wentworth Headquarters.'

In the second version, reported in the Chicago 

Tribune by Lisa Donovan and Jeffrey Bliss, October 31, 

1999, the writers state that Cole 'was shot and killed 

inside an interview room...after he allegedly attacked 

a detective, that Cole was shot in the head and 

the abdomen...there was a struggle and the offender was 

shot.'

In the third version, which lacks attribution, Cole grabbed a metal paper spindle and attacked the detective, that Cole grabbed the detective's gun from his holster and then shot at the detective as he was fleeing from the room, that two other detectives who witnessed the incident returned the fire, striking Cole and that Cole then turned the gun on himself and inflicted one gunshot wound to the head area.

In the fourth version reported in the Chicago Tribune by Margaret O'Brien and Naomi Dillon, November 1, 1999, according to Wentworth Area Commander Frank Trigg:

'Cole grabbed a seven-inch paper spike...and lunged at the detective...that while the two were struggling, Cole grabbed the detective's gun ripping the holster strap in the process...Cole then fired at the officer but missed.  A second detective outside the office heard the shot, came to the door and fired at Cole, who was crouched against a cabinet and pointing a gun at the one door to the room....After the shot missed Cole, the second officer took cover behind the door frame as the first officer took cover on the floor. A third shot was then heard...that police believe Cole put the gun in his mouth and shot himself in the head...that after the third shot, Cole was still crouched at the file cabinet with his gun pointed toward the door. At that point, another detective came to the door and shot Cole in the left side of his torso, after which Cole slumped to the ground.'

In the fifth version, set forth in another Chicago Tribune article by Monica Davey, December 1, 1999, the writer reports that according to police spokesman Pat Camden:

'About 7:00 p.m, on October 30, at Wentworth, 5101 South Wentworth Ave., Cole asked the detective who was questioning him to be moved from an ordinary interrogation room to somewhere that he couldn't be overheard.  After moving to a small office, Cole grabbed a 7-inch paper spike intended for phone messages and lunged at the detective.  In the struggle, Cole grabbed the detective's gun.  He fired at the officer but missed.  With the sound of the shot two other officers bolted into the office, and each fired at Cole.  Almost simultaneously, Cook County prosecutors say, Cole shot himself in the mouth.  Camden said he was not sure the order of the last shots fired.  A medical examiner's report shows three gunshot wounds on Cole's body: in his mouth, in his abdomen, and on his right arm.  The examiner's report, which categorized Cole's death as a suicide, said the wound in Cole's mouth was what killed him.'"

On April 12, 2000, following courtroom assignment, Richard A. Devine, in his official capacity as Cook County State's Attorney, filed a motion to intervene in the instant matter.  McCall filed an objection to the motion and, following oral argument, the trial court granted Devine's motion to intervene.

Subsequently, on September 21, 2000, Devine filed a motion under section 2-615(e) of the Code of Civil Procedure (735 ILCS 5/2-615(e) (West 2000)) for judgment on the pleadings.  The motion alleged that McCall failed to establish, as a matter of law, that there was a conflict of interest which precluded Devine from investigating and deciding whether to prosecute anyone for Cole's death.  For purposes of the motion, Devine admitted as true the allegation that over 90% of the criminal cases prosecuted by the Cook County State's Attorney's office have been investigated and brought to the Cook County State's Attorney's office by the Chicago police department.  Devine asserted, however, that the fact that Chicago police officers "investigate crimes and seek the initiation of criminal prosecutions does not mean that the State's Attorney of Cook County has a personal interest in each member of the department sufficient to remove him from his statutorily mandated responsibilities."  Devine asked the court to disregard McCall's remaining allegations as either conclusory in nature or surplusage.  Devine denied interest in the matter as a private individual and/or as an actual party to the action.   

On December 5, 2000, following oral argument, the trial court entered a written order granting Devine's motion for judgment on the pleadings.  Specifically, the trial court rejected McCall's allegation that the police offered false and contradictory factual versions of the circumstances of the shooting.  The court found that the allegations were "wholly conclusory" and stemmed from hearsay statements contained in newspaper articles.  Moreover, the court found that the differences in the versions of events could be attributed to "shifting details as a natural outgrowth of any evolving investigation."  The trial court found McCall's assertion that assistant State's Attorneys and medical examiners are not called to the scene of homicides, and that it is not their duty to investigate such crimes, was "utterly unfounded."  Finally, the trial court found that McCall failed to establish as a matter of law that Devine was interested in the instant matter.  Specifically, the court found that Devine would not be a party to any investigation or proceeding sought by McCall and that Devine was not interested as a private individual in the investigation of Cole's death.

McCall now appeals from that judgment.            

II.  ANALYSIS

McCall argues that the trial court erroneously granted Devine's motion for judgment on the pleadings where the petition filed established a cause of action for appointment of a special prosecutor to investigate and prosecute the death of Reginald Cole.  Specifically, McCall alleges that the relationship between the Cook County State's Attorney and the Chicago police department creates a conflict of interest that prevents Devine from conducting a fair and impartial investigation and prosecution.

Judgment on the pleadings is proper only where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  
Chicago Title & Trust Co. v. Steinitz
, 288 Ill. App. 3d 926, 934 (1997).  In ruling on a motion for judgment on the pleadings, only those facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record may be considered.  
M.A.K. v. Rush-Presbyterian-St. Luke's Medical Center
, 198 Ill. 2d 249, 255 (2001).  When evaluating the facts, a court must construe the evidence strictly against the movant and liberally in favor of the nonmoving party.  
Dowd & Dowd, Ltd. v. Gleason
, 181 Ill. 2d 460, 483 (1998). Our review is 
de novo
.  
Board of Trustees of the University of Illinois v. City of Chicago
, 317 Ill. App. 3d 569, 571 (2000).

When a party moves for judgment on the pleadings pursuant to section 2-615(e) of the Code of Civil Procedure (the Code) (735 ILCS 5/2-615(e) (West 1994)), it concedes the truth of the well-pled facts in the respondent's pleadings.  
Richco Plastic Co. v. IMS Co.
, 288 Ill. App. 3d 782, 786 (1997).  This court has stated that a motion for judgment on the pleadings may be addressed to a complaint alone.  
Pioneer Bank & Trust Co. v. Austin Bank of Chicago
, 279 Ill. App. 3d 9, 13 (1996).  In deciding the motion, a court must disregard all surplusage and conclusory allegations.  
Teeple v. Hunziker
, 118 Ill. App. 3d 492, 497 (1983).

As previously stated, "Whenever the State's [A]ttorney is sick or absent, or unable to attend, or is interested in any cause or proceeding, civil or criminal, which it is or may be his duty to prosecute or defend, the court in which said cause or proceeding is pending may appoint some competent attorney to prosecute or defend such cause or proceeding ***." 55 ILCS 5/3-9008 (West 2000).  In 
Environmental Protection Agency v. Pollution Control Board
, 69 Ill. 2d 394 (1977), our supreme court interpreted section 6 of "An Act in regard to attorneys general and state's attorneys" (Ill. Rev. Stat. 1975, ch. 14, par. 6), which provided:

"Whenever the attorney general or state's attorney is sick or absent, or unable to attend, or is interested in any cause or proceeding, civil or criminal, which it is or may be his duty to prosecute or defend, the court in which said cause or proceeding is pending may appoint some competent attorney to prosecute or defend such cause or proceeding ***."  Ill. Rev. Stat. 1975, ch. 14, par. 6. 

Effective January 1, 1988, chapter 14, section 6 was amended so that Attorneys general and State's Attorneys would be considered under separate acts compiled in the Illinois Revised Statutes. The appointment of counsel to replace the Attorney General is now addressed by section 6 of the Attorney General Act (15 ILCS 205/6 (West 1998)).  The pertinent language of section 3-9008 of the Counties Code (55 ILCS 5/3-9008 (West 2000)) is identical to that of section 6, which was interpreted by our supreme court in 
Environmental Protection Agency
, 69 Ill. 2d 394.

In 
Environmental Protection Agency
, the supreme court agreed with the Attorney General's interpretation that "interest" under section 6 exists only in two situations: "[t]he first is where the Attorney General is interested as a private individual. [Citation.]  The second situation is where the Attorney General is an actual party to the action."  
Environmental Protection Agency v. Pollution Control Board
, 69 Ill. 2d at 400-01.  The court specifically held that "[t]he provision of section 6 that special counsel may be appointed where the Attorney General is interested should be limited to the situations above." 
Environmental Protection Agency
, 69 Ill. 2d at 401.

At oral argument, McCall's attorney acknowledged that his complaint never alleged Devine was "interested" in either of the two manners discussed in  
Environmental Protection Agency
.  Namely, the complaint never alleged that Devine was interested as a "private individual" or that he or the State's Attorney's office would be "an actual party to the action."  McCall's attorney argues that the required statutory interest is not limited to these two instances alone.

The decision to appoint a special prosecutor under section 3-9008 of the Counties Code (55 ILCS 5/3-9008 (West 2000)) lies within the trial court's discretion.  
People v. Morley
, 287 Ill. App. 3d 499, 504 (1997).  This provision's purpose is "to prevent any influence upon the discharge of the duties of the State's Attorney by reason of personal interest." 
Morley
, 287 Ill. App. 3d at 503-04.  This court has consistently held that a State's Attorney is "interested" for purposes of section 3-9008 only where he is interested as a private individual or his office is a party to the action.  
People v. Tracy
, 291 Ill. App. 3d 145, 151 (1997); 
People v. Morley
, 287 Ill. App. 3d 499, 504 (1997); 
People v. Dall
, 207 Ill. App. 3d 508, 530 (1991); 
People v. Trolia
, 107 Ill. App. 3d 487, 496 (1982)(interpreting section 6).

On appeal, McCall relies heavily on 
People v. Courtney
, 288 Ill. App. 3d 1025 (1997), for its holding that it is improper for an attorney to represent conflicting interests or undertake to discharge inconsistent duties, and "the public must be able to maintain the right to believe in the total integrity of the Bar as a whole."  
Courtney
, 288 Ill. App. 3d at 1032-33.  In 
Courtney
, the defense attorney who represented the defendant for the first 14 months his sexual assault case was pending was appointed as the State's Attorney of Kankakee County.  The Kankakee County State's Attorney's office informed the trial court that a special prosecutor would be appointed.  After several continuances, the case was tried by a member of the Kankakee County State's Attorney's office. The appellate court found that prior to becoming State's Attorney, defendant's counsel answered discovery, "made numerous court appearances on behalf of the defendant and was clearly privy to the defendant's confidences."  
Courtney
, 288 Ill. App. 3d at 1032.  The court held that a 
per se
 conflict existed and a special prosecutor should have been appointed. 
Courtney
, 288 Ill. App. 3d at 1034.

The facts in 
Courtney
 bear no relation to those in the present case and, consequently, its holding is of negligible assistance to this court.  However, the State has cited a case in which the appellate court seems to apply a more expansive interpretation of the principle of conflict of interest than that set out by our supreme court in 
Environmental Protection Agency
.  In
 
Baxter v. Peterlin
, 156 Ill. App. 3d 564 (1987)
, the plaintiff, an Ottawa police officer, filed a complaint seeking appointment of a special prosecutor to prosecute the alleged wrongdoings of the mayor of Ottawa.  Plaintiff alleged the defendant, the State's Attorney of La Salle County, had a disqualifying interest in any prosecution of the mayor as a result of the political relationship between the State's Attorney and the mayor.  The circuit court, in accepting the complaint's factual allegations as true, dismissed the complaint, finding plaintiff's allegations insufficient.

On appeal, the Third District of the Appellate Court held:

"We agree with plaintiff's contention that a political alliance may create sufficient conflict of interest to require appointment of a special prosecutor.  Nevertheless, 'political alliance' is an amorphous concept.  It might range from a prosecutor belonging to the same political party as the person he is called upon to prosecute, to a situation in which a prosecutor is clearly beholden to a potential defendant for political reasons. Before a court need appoint a special prosecutor because the State's Attorney has a conflict of interest because of a 'political alliance,' a petitioner must plead and prove specific facts regarding the nature of the alliance as well as facts tending to show the State's Attorney would not zealously represent the People of the State of Illinois because of the alliance.  To require a petitioner to plead and prove anything less would open the door to requiring a special prosecutor be appointed any time a public official of whatever rank is suspected of wrongdoing."  
Baxter
, 156 Ill. App. 3d at 566.

The court went on to state that absent specific facts regarding the alleged political ties which would make it improbable that the State's Attorney would carry out his duties in an unbiased manner on a specific case, the statute does not require appointment of a special prosecutor to substitute for the State's Attorney.  
Baxter
, 156 Ill. App. 3d at 566-67.  Because the plaintiff's allegations regarding any political ties were "speculative and conclusory," the circuit court properly declined to appoint a special prosecutor.  
Baxter
, 156 Ill. App. 3d at 567.

In analogizing 
Baxter
 to the case at bar, it is clear that McCall's petition is similarly insufficient to warrant the appointment of a special prosecutor.  McCall has failed to plead specific facts regarding the alleged relationship of "cordiality, compatibility, support, [and] fidelity" between Devine and the Chicago police department which would make it improbable that Devine would conduct an unbiased investigation and prosecution in this case.  In support of her argument that a disqualifying bond exists, McCall's petition alleges "well over 90% of the cases prosecuted by the Cook County State's Attorney's office are indeed investigated and brought by the Chicago police department."  We agree with the trial court that this fact alone does not establish a disqualifying bond.

 Accepting the allegation as true, the trial court stated "it hardly follows that the purported fidelity bond and relationship complained of by petitioner would have impacted on respondent's investigation or prosecution of police officers suspected of wrong doing."  The court continued: 

"On the contrary, the State's Attorney's office in this court's memory has never hesitated to prosecute law enforcement officials where the evidence warranted criminal charges.  See 
e.g.
, 
People v. Davis
, 281 Ill. App. 3d 984, (1996) (director of news affairs for the Chicago police department prosecuted for official misconduct); 
People v. Sorice
, 182 Ill. App. 3d 949 (1989) (Chicago police officer prosecuted for conspiracy to commit burglary); 
People v. Melchor
, 180 Ill. App. 3d 372 (1989) (Chicago police officer prosecuted for delivery of a controlled substance); 
People v. Earullo
, 113 Ill. App. 3d 774 (1983) (Chicago police officer prosecuted for involuntary manslaughter); 
People v. McCarthy
, 102 Ill. App. 3d 519 (1981) (Chicago police officer charged with attempt murder and aggravated battery); 
People v. Molsby
, 66 Ill. App. 3d 647 (1978) (Chicago police officer prosecuted for possession of a controlled substance); and 
People v. Jordon
, 15 Ill. App. 3d 672 (1973) (Chicago police officer prosecuted for bribery and official misconduct)." 

For this court to hold that the trial court abused its discretion in denying the petition would require us to hold that McCall's allegation that 90% of the Cook County State's Attorney's office's cases came from the Chicago police department will always require that a special prosecutor be appointed whenever anyone alleges wrongdoing on the part of Chicago police department personnel. While this allegation does establish a close professional working relationship, nothing in the allegation shows that Devine would not zealously represent the People of the State of Illinois in this case of alleged police misconduct. 

McCall further supports her argument on appeal with the assertion that the State's Attorney failed to investigate or prosecute police officers involved in "the shooting death of Robert Russ; the arrest and detention of R.G. and E.H.; the use of perjured evidence resulting in the convictions and ultimately the 20 year prison terms of Willie Rainge, Kenny Adams, Verneal Jimerson and Dennis Williams; or the use of perjured testimony to convict and imprison John Willis and Anthony Porter and other cases."  The convictions of Rainge, Adams, Jimerson and Williams arose out of an investigation by the Cook County sheriff's department and several suburban police departments.  
People v. Rainge
, 211 Ill. App. 3d 432 (1991).  Using the figures supplied by McCall, significantly less than 10% of the criminal cases prosecuted by the Cook County State's Attorney's office were investigated by those departments.  The fact that the State's Attorney's office failed to prosecute the police officers involved in the 
Rainge
 case actually contradicts McCall's assertion that it is the State's Attorney's office's dependent relationship with the Chicago police department that prevents that office from investigating and prosecuting Chicago police officers.  Applying the rationale advanced by McCall on appeal, courts should appoint special prosecutors to investigate every complaint of possible wrongdoing by law enforcement officers of any agency that has a working relationship with the Cook County State's Attorney's office.  We flatly reject this argument.  

In affirming the denial of a request for appointment of counsel other than the Attorney General's office, our supreme court has explained: "It seems to us that if the Attorney General is to have the unqualified role of chief legal officer of the State, he or she must be able to direct the legal affairs of the State and its agencies.  Only in this way will the Attorney General properly serve the State and the public interest."  
Environmental Protection Agency
, 69 Ill. 2d at 401-02. 

In support of the notion that Devine's office and the Chicago police are so intertwined as to create a conflict of interest, McCall avers that Devine's office is dependent on the Chicago police to "obtain evidence upon which to base its prosecutions of alleged criminal conduct."  Again, all this allegation does is demonstrate that a close professional relationship exists between these two agencies and, in a very limited way, defines the nature of the relationship.  Generally, "[p]erformance of one's official functions will not create a conflict of interest."  
People v. Dall
, 207 Ill. App. 3d at 530, citing  
Environmental Protection Agency
, 69 Ill. 2d 394.  In addition:

"[T]he State's Attorney does not represent individuals or specific witnesses during the course of criminal prosecutions.  Criminal prosecutions are commenced in the name of and on behalf of the people of the State of Illinois.  To hold that a special prosecutor must always be appointed whenever a victim or witness is employed by a state, county, or local agency would be an illogical, as well as impractical, encroachment upon the authority of a constitutional officer."  
People v. Morley
, 287 Ill. App. 3d 499, 505 (1997). 

McCall has failed to allege any specific failure to obtain evidence, or any specific cover-up of evidence, which would illustrate that Devine has abandoned his duties to the people of the State of Illinois in this particular case. 

In further support of her argument, McCall cites five Chicago Tribune articles. McCall alleges that the differing police versions reported in these articles were implausible and are proof that a conspiracy and cover-up existed between Devine and the Chicago police department. We disagree.  The contents of newspaper articles are hearsay and therefore inadmissible.  
Betts v. Manville Personal Injury Settlement Trust
, 225 Ill. App. 3d 882, 924 (1992).  The reason that newspaper articles are treated as hearsay has been eloquently stated as follows:

"It is very obvious that factual matters should not be proven by newspaper reports of occurrences.  While there is an inclination on the part of the general public to accept newspaper stories at face value-and the quality of the reporting should be careful enough that such reliance is generally justified-the fact remains that news stories are frequently based on the hearsay statements of others, or on the statements of bystanders, witnesses to the occurrence, public officers, and other informants.  Because of this they are often, if not notoriously, apt to be inaccurate.  This is not always due to careless reporting or slanting or over-emphasis, but rather to the pressure of haste and to the inherent fact that the news story does not purport to present the results of careful investigations, or at least that it purports to report only, or mostly, what others have said about the matter." R. Steigmann, Illinois Evidence Manual § 14:28, at 365 (2d ed. 1995) 

As the articles themselves relate, Pat Camden, police spokesman, explained that the "shifting details" of the stories were a "natural outgrowth of any evolving investigation."  Camden also stated "the night it happens the media wants instant facts....As the investigation continues, we get additional facts. That's not unusual."  We agree with the trial court that this allegation is "wholly conclusory."

In additional support for her argument, in her petition,  McCall maintained that a conspiracy was evident where assistant State's Attorneys and medical examiners were present at Area One, the scene of the crime, which is outside the scope of their duties and responsibilities. Apparently McCall has abandoned this argument for it cannot be found in her brief on appeal. However, we  acknowledge, as did the trial court, any allegation that it is not the duty or responsibility of members of the State's Attorney's office or medical examiner's office to investigate such matters is "utterly unfounded."  As the trial court stated, "it has long been the practice for [S]tate's [A]ttorneys to assist the police investigations to determine what charges, if any, are warranted by the evidence."  In fact, it has been held that the duties of the State's Attorney 
require
 an investigation into the facts of an incident.  
McDonald v. County Board
, 146 Ill. App. 3d 1051, 1055 (1986); see also 
People v. Wilson
, 254 Ill. App. 3d 1020, 1039 (1993); 
Ware v. Carey
, 75 Ill. App. 3d 906, 914 (1979); 
People v. Pohl
, 47 Ill. App. 2d 232, 242 (1964).  Additionally, the Cook County State's Attorney's office maintains a felony review unit specifically for the purpose of fulfilling their investigative duties.  

As for the Cook County medical examiner, it is the duty and function of that office to determine both the cause and manner of death. Section 3-3013(e) (55 ILCS 5/3-3013(e) (West 2000)) provides that every coroner in cases of sudden or violent death "shall go to the place where the dead body is, and take charge of the same and shall make a preliminary investigation into the circumstances of the death."  McCall's assertion that, because the body had been removed from the station, there was no need for medical examiner personnel to go to the station is unconvincing.  That fact does not alter the medical examiner's duty to conduct an investigation into the circumstances of the death.  

In addition, it can be persuasively argued that the fact that Devine's office and the medical examiner's office sent officials to conduct investigations into Cole's death directly undermines McCall's entire argument. This fact could be interpreted to demonstrate that Devine and the medical examiner acted independently of the Chicago police to conduct their own investigations in order to zealously protect the public.

McCall's argument that the fact that the assistant State's Attorneys went to the police station to conduct an investigation and decided not to prosecute any police officers is evidence of the conspiracy is also unavailing.  As the court noted in 
Baxter
, "prosecutorial discretion is an essential component of the criminal justice system.  No good purpose would be served by permitting a person in the plaintiff's position to claim impropriety on the part of a prosecutor based upon hindsight, because he disagreed with the prosecutor's conclusions regarding a particular case."  
Baxter v. Peterlin
, 156 Ill. App. 3d at 567.  McCall has not pled any actual or specific impropriety or insufficiency in the investigation conducted by Devine's office.

The majority of the cases addressing section 3-9008 arise out of disputes between governmental agencies that are both represented by the State's Attorney's office or criminal cases where a defendant who is already charged with an offense requests appointment of a special prosecutor to take over the pending case.  A request to appoint a special prosecutor for the purpose of investigating and possibly charging individuals with a criminal offense raises different concerns relating to the separation of powers doctrine.  "It is settled 'that the State's Attorney, as a member of the executive branch of government, is vested with exclusive discretion in the initiation and management of a criminal prosecution. [Citations.]' "  
People v. Novak
, 163 Ill. 2d 93, 113 (1994); quoting 
People ex rel. Daley v. Moran
, 94 Ill. 2d 41, 45-46 (1983).  This discretion includes the decision whether to prosecute at all.  
People ex rel. Daley v. Moran
, 94 Ill. 2d 41, 46 (1983); 
People v. Edgeston
, 243 Ill. App. 3d 1, 11 (1993).  Appointment of a special prosecutor, which infringes upon that exclusive discretion, will only be warranted based upon specific factual allegations of "interest" within the meaning of section 3-9008 of the Counties Code.  55 ILCS 5/3-9008 (West 2000).  And while the appointment is within the discretion of the trial court, disqualification of a State's Attorney requires more than mere suspicion or speculation.  
People ex rel. York v. Downen
, 119 Ill. App. 3d 29, 33-34 (1983).  
As the trial court stated:

"[R]emoval of a duly elected public official is a drastic measure for it disenfranchises the very electorate who, through its votes, has spoken.  As respondent notes, the Office of the State's Attorney is an office of constitutional dimension reposing in the executive branch of government.  Under our tripartite system of government that branch is co-equal to the legislature as well as the judiciary.  And while the legislature has empowered judges to disqualify the State's Attorney in certain limited situations, respect for the doctrine of separation of powers cautions against the exercise of such power unless clearly warranted."  

In this case the record indicates that the trial court clearly accepted all well-pled facts as true and disregarded all surplus and conclusory allegations.  
Teeple v. Hunziker
, 118 Ill. App. 3d at 497.  McCall's petition was insufficient in that it lacked the requisite specific facts that would establish the alleged disqualifying bond.  The applicable case law requires us to look at the individual interest of the State's Attorney.  The only interest cited in this case is McCall's allegation that over 90% of the cases prosecuted by the Cook County State's Attorney's office are investigated by the Chicago police department. While McCall strongly argues that the facts of this specific case (conflicting versions of the shooting) require the appointment of a special prosecutor, none of the facts pled relating to this shooting make the State's Attorney personally interested in this case. To require McCall to plead and prove anything less than such specific facts would open the door to requiring a special prosecutor to be appointed any time a police officer is suspected of wrongdoing.  See 
Baxter v. Peterlin
, 156 Ill. App. 3d 564, 566 (1987).  Therefore, because McCall's petition failed to state a cause of action for the appointment of a special prosecutor, we find that the trial court properly denied McCall's petition and granted Devine's motion for judgment on the pleadings.  

For the foregoing reasons, we affirm the decision of the trial court
.

Affirmed.

GREIMAN and REID, JJ., concur.

   .