2019 IL App (1st) 173173

SIXTH DIVISION
March 29, 2019

No. 1-17-3173

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| *In re* APPOINTMENT OF SPECIAL PROSECUTOR | ) | Appeal from the Circuit Court of Cook County. |
| (EMMETT FARMER, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | No. 2017 MR 33 |
| v. | ) | |
| | ) | |
| THE COOK COUNTY STATE'S ATTORNEY'S OFFICE, | ) | |
| | ) | |
| | ) | Honorable LeRoy Martin, Jr., |
| Respondent-Appellee.) | ) | Judge Presiding. |

PRESIDING JUSTICE DELORT delivered the judgment of the court, with opinion. Justices Cunningham and Connors concurred in the judgment and opinion.

**OPINION**

¶ 1     Petitioner Emmett Farmer filed a petition seeking the appointment of a special state's attorney "to determine whether criminal charges should be brought against any person in connection with the homicide of his son, Flint Farmer."[1] After receiving briefs and hearing argument, the circuit court denied the petition. We affirm.

_____

[1]Because Emmett and Flint Farmer share the same last name, we will refer to them by their first names.

¶ 2                    I. BACKGROUND

¶ 3    According to the petition, in the early hours of June 7, 2011, Officer Gildardo Sierra of the Chicago Police Department and his partner responded to a domestic violence incident. When the police arrived, Flint fled the scene on foot. Officer Sierra gave chase and eventually fired his gun 16 times. Seven bullets struck Flint, killing him.

¶ 4    Shortly thereafter, Officer Sierra gave a statement, claiming that Flint had pulled "a black object" out of his pocket and charged at him. He claimed that he was afraid for his life, which led him to fire his weapon until it was empty. Although Officer Sierra stated that he believed that the object in Flint's hand was a gun, it turned out to be a cell phone.

¶ 5    The shooting was investigated by the Independent Police Review Authority (IPRA), the Cook County State's Attorney's Office, and the Federal Bureau of Investigation. The IPRA found that the shooting was justified, and in 2013, Cook County State's Attorney Anita Alvarez sent a "white paper" to the Chicago Police Superintendent, explaining the decision not to file charges against Officer Sierra. Having reviewed the evidence, Alvarez concluded that the prosecution could not prove beyond a reasonable doubt that the shooting was not justified. Specifically, the "white paper" stated that the state's attorney had fully examined both the applicable law and facts—including all the "witness statements, the physical evidence and the police radio transmissions and dashboard video recordings"—and concluded that no charges would be filed because "the prosecution could not prove beyond a reasonable doubt that Officer Sierra's belief that Flint Farmer posed a threat of great bodily harm was unreasonable, or that his actions could not be justified as incident to affecting a proper arrest for a violent felony."

¶ 6    In 2015, the IPRA reopened its investigation of the shooting, and ultimately sustained two allegations against Officer Sierra for violating Chicago Police Department rules and

regulations for the use of deadly force. Specifically, the IPRA found that "there is not enough physical evidence to determine whether or not PO Sierra's use of force in his initial interaction with Mr. Farmer was reasonable. However, the preponderance of evidence shows that PO Sierra acted unreasonably when he fired the final three shots at Mr. Farmer." This conclusion rested, in part, on discrepancies in Officer Sierra's various accounts of the shooting.

¶ 7     Following the installation of Kimberly M. Foxx as the Cook County state's attorney, that office again reviewed the case and again determined that there was insufficient evidence to support criminal charges against Officer Sierra.

¶ 8     In September 2017, Emmett filed his petition to appoint a special prosecutor on the grounds that State's Attorney Foxx is "unable to fulfill her duties *** because she has an actual conflict of interests and her public comments regarding her office's ability to prosecute police officers has created an appearance of impropriety that severely undermines the public's confidence that any potential prosecution will be just, fair, and impartial." Moreover, Emmett alleged that "there is an actual conflict of interest whenever the Cook County State's Attorney's Office prosecutes police involved shootings."

¶ 9     In his memorandum of law in support of his petition, Emmett gave an account of his son's shooting and the following investigation. He argued that the investigation showed that Officer Sierra was not credible and that the state's attorney was unable, due to bias, to properly prosecute the case.

¶ 10    Emmett alleged that Officer Sierra's account of the shooting was inconsistent. Officer Sierra initially stated to detectives that he fired all 16 shots before Flint fell to the ground. However, dashboard camera footage showed that he fired the final three shots while Flint was already on the ground. After viewing the video, Officer Sierra related that Flint had tripped over

uneven pavement near a tree. Officer Sierra claimed that he then began "tactically moving" toward the tree for cover. Emmett argued that these inconsistencies showed that Officer Sierra was not a reliable witness and that the state's attorney should not have relied on his account of the shooting.

¶ 11     Emmett also argued that police dashboard camera footage of the shooting shows Officer Sierra standing over his son, shooting him as he lay prone on the ground. According to Emmett, this footage, taken with details from an autopsy report, established that Officer Sierra fatally wounded his son while he clearly posed no physical threat.

¶ 12     Emmett argued that State's Attorney Alvarez's "white paper" showed undue deference to Officer Sierra's account of what happened and ignored relevant evidence and case law. Further, he alleged that State's Attorney Foxx relied on the same faulty analysis as in the "white paper."

¶ 13     In addition to the details and arguments specific to the shooting of Flint, the memorandum described over two dozen other police-involved shootings where the Cook County state's attorney did not file criminal charges. Emmett also attached to his petition a number of documents and video clips related to these other shootings. He argued that these other incidents establish that the Cook County state's attorney has a "documented history of inadequately investigating and prosecuting police-involved shootings."

¶ 14     Based on the allegations related to the Flint Farmer shooting, as well as the other shootings for which no criminal charges were brought, Emmett argued that the Cook County state's attorney was "unable to fulfill her duties" because "[her] participation would create the appearance of impropriety." Additionally, he argued that a *per se* conflict of interest exists whenever the Cook County State's Attorney's Office investigates or prosecutes members of the Chicago Police Department because "the Chicago Police Department *** is vital to assisting in

4

the prosecution of virtually all its cases." In support of this contention, Emmett quoted Foxx, who, during her campaign for the position of Cook County state's attorney, made statements such as, "[t]here is an inherent conflict of interest because of the intimate relationship between the prosecutor's office and the police, and to suggest that doesn't exist is disingenuous."

¶ 15    In her objection to the petition, State's Attorney Foxx argued that Emmett had failed to establish that she was "sick, absent or otherwise unable to fulfill *** her duties" or that she had "an actual conflict of interest in the cause or proceeding." Additionally, the state's attorney argued that she had the exclusive constitutional and statutory authority to decide which, if any, criminal charges to bring in any given case. She also argued that the alleged pattern of un- or under-prosecuted police-involved shootings all occurred before she was elected.

¶ 16    On October 31, 2017, the circuit court made an oral ruling and issued a single sentence order denying the petition.[2] In its oral ruling, the court stated that Emmett had not articulated any "reason why the prosecutor, the state's attorney's office ought to be disqualified" in this specific case. Additionally, the court expressed reluctance to personally review the underlying evidence and second-guess the state's attorney's decision not to prosecute Officer Sierra. This appeal followed.

¶ 17                                   II. ANALYSIS

¶ 18    At oral argument, we raised a concern that State's Attorney Alvarez's "white paper"—a key document upon which the circuit court undoubtedly placed strong reliance—was not contained in the appellate record. In fact, the record is very brief and essentially contains only

---

[2]The record seems to indicate that the circuit court heard oral argument on October 20, 2017, although no transcript of that hearing appears in the record. However, the absence of that transcript does not preclude review of the circuit court's decision. See *Walker v. Iowa Marine Repair Corp.*, 132 Ill. App. 3d 621, 625-26 (1985). This court need not review the transcript because the circuit court "could only have based its ruling on the pleadings and affidavits ***, thus rendering the transcript nothing more than a memorialization of the arguments of the attorneys." *Id.* at 625.

documents favorable to the petitioner's position. Both counsel for the petitioner and the assistant state's attorney who argued expressed surprise at our concern, noting their understanding that the documents were, in fact, contained in a compact disc (CD) attached to the petition in the record. The CD was not in the record, and so we would have been well within our authority to summarily affirm for the petitioner's failure to provide a complete record. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Nonetheless, because of the nature of this case and the mutual misunderstanding of both parties, we issued an order requiring the clerk of the circuit court to locate the CD in the record and certify it to this court as a supplemental record. The clerk could not find the CD. Again, rather than summarily affirm based on *Foutch*, we then took the unusual step of authorizing the parties to reconstruct the CD and file it directly with this court. By doing so, we do not intend to set a precedent allowing such a procedure in future cases.

¶ 19    Emmett contends that the circuit court erred in denying his petition because the state's attorney (1) is "unable to fulfill *** her duties" under subsection 3-9008(a-5) of the Counties Code (55 ILCS 5/3-9008(a-5) (West 2016)) and (2) has a *per se* "actual conflict of interest" under subsection 3-9008(a-10) whenever there is a police-involved shooting (*id.* § 3-9008(a-10)). The first argument relies on *People v. Lang*, 346 Ill. App. 3d 677, 682 (2004), for the proposition that "the appointment of a special prosecutor may *** be required if it is necessary to remove the appearance of impropriety in the prosecution of a defendant." The second argument relies mainly on statements made by Foxx before she was elected as Cook County state's attorney.

¶ 20    Emmett contends that our review should be *de novo* because the facts of the case are undisputed. But even in cases where the facts are undisputed, the trial court still has discretion in making certain decisions. See, *e.g.*, *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 123 (1998) (reviewing for abuse of discretion the trial court's imposition of a particular sanction).

The Counties Code provides that the circuit court "may appoint" a special prosecutor. 55 ILCS 5/3-9008(a-5), (a-10) (West 2016). "[T]his permits the hearing body to exercise its discretion in reviewing the circumstances to determine the need for such action." *Sommer v. Goetze*, 102 Ill. App. 3d 117, 120 (1981). "Such authority notwithstanding, that discretion must be exercised to promote the underlying policy of a just, fair and impartial hearing, and where those ends are thwarted, an abuse of discretion occurs." *Id.* Consequently, we review the circuit court's denial of Emmett's petition for an abuse of discretion.

¶ 21    Before 2016, the Counties Code read, in pertinent part:

"Whenever the State's attorney is sick or absent, or unable to attend, or is

interested in any cause or proceeding, civil or criminal, which it is or may be his

duty to prosecute or defend, the court in which said cause or proceeding is

pending may appoint some competent attorney to prosecute or defend such cause

or proceeding, and the attorney so appointed shall have the same power and

authority in relation to such cause or proceeding as the State's attorney would

have had if present and attending to the same." 55 ILCS 5/3-9008(a) (West 2014).

¶ 22    However, effective January 1, 2016, the legislature significantly amended section 3-9008 of the Counties Code. It now provides, in relevant part:

"(a-5) The court on its own motion, or an interested person in a cause or

proceeding, civil or criminal, may file a petition alleging that the State's Attorney

is sick, absent, or unable to fulfill his or her duties. The court shall consider the

petition, any documents filed in response, and if necessary, grant a hearing to

determine whether the State's Attorney is sick, absent, or otherwise unable to

fulfill his or her duties. If the court finds that the State's Attorney is sick, absent,

7

or otherwise unable to fulfill his or her duties, the court may appoint some competent attorney to prosecute or defend the cause or proceeding.

(a-10) The court on its own motion, or an interested person in a cause or proceeding, civil or criminal, may file a petition alleging that the State's Attorney has an actual conflict of interest in the cause or proceeding. The court shall consider the petition, any documents filed in response, and if necessary, grant a hearing to determine whether the State's Attorney has an actual conflict of interest in the cause or proceeding. If the court finds that the petitioner has proven by sufficient facts and evidence that the State's Attorney has an actual conflict of interest in a specific case, the court may appoint some competent attorney to prosecute or defend the cause or proceeding." 55 ILCS 5/3-9008(a-5), (a-10) (West 2016).

¶ 23    The primary objective in construing a statute is to ascertain and give effect to the intent of the legislature. *Valfer v. Evanston Northwestern Healthcare*, 2016 IL 119220, ¶ 22. The plain and ordinary meaning of the language of the statute is the best signal of legislative intent. *Id.* We do not consider words and phrases in isolation, but view them in relation to other relevant provisions of the statute. *Id.* We presume that the legislature did not intend to include any meaningless language or "intend absurdity, inconvenience, or injustice." *Id.* "Where the statutory language is clear and unambiguous, it will be given effect without resort to other aids of construction." *Id.* "A material change in a statute made by an amendatory act is presumed to change the original statute." *O'Connor v. A&P Enterprises*, 81 Ill. 2d 260, 271 (1980).

¶ 24    When the proposed amendment to section 3-9008 was debated in the Illinois House of Representatives, Representative Jack Franks explicitly asked the bill's sponsor, Representative

Elgie Sims, "*for legislative intent*, tell us your idea of the special prosecutors and who would have standing to ask for it?" (Emphasis added.) 99th Ill. Gen. Assem., House Proceedings, May 28, 2015, at 141 (statements of Representative Franks). In his response to that question, Representative Sims stated, "what we put into the language we adopted and *made a change* that the state's attorneys were looking for to address *actual conflicts*. So, *** any individual can petition the court if they believe there's *an actual conflict* ***." (Emphases added.) *Id.* (statements of Representative Sims). Later, Representative Sims described how he envisioned the statute being applied to a situation almost exactly like this case:

> "So what we've put into the Bill, if there is an officer-involved shooting, *** there must be *** two outside investigators who come in *** . *** once the investigation is done, a report is then submitted to the state's attorney. Once the state's attorney *** gets the report, if they choose not to indict *** after reading the report, the report is then made public so that citizens get the opportunity to see the evidence that was brought to bear and they get to make the decision for themselves on *** why the decision was not. But in keeping with that, *** if individuals who are involved in the situation then in turn believe that the state's attorney made the wrong call, there is a process in this legislation where an individual can then seek the appointment of a special prosecutor. *** [T]he court will then make a determination *based on an actual conflict that exists* and the appointment of a special prosecutor can occur." (Emphasis added.) *Id.* at 205 (statements of Representative Sims).

¶ 25                                    A. Subsection (a-5)

¶ 26    The parties dispute the breadth of subsection (a-5). Emmett argues that it is a very broad provision, allowing for a special prosecutor whenever there is an appearance of impropriety. The State takes the position that subsection (a-5) is extremely narrow, relating only to instances where the state's attorney is physically unable to perform her duties.

¶ 27    Both parties acknowledge that the conditions "sick" and "absent" remain unchanged from the earlier version of the statute. The State argues that the new language, "otherwise unable to fulfill his or her duties," is merely a stylistic update of "unable to attend" and serves as a catch-all for situations in which the state's attorney is *physically* unable to perform and has no assistant state's attorneys available to attend to the matter. Emmett, on the other hand, argues that "otherwise unable to fulfill *** her duties" was meant to replace the prior version's language, "interested in any cause or proceeding," and incorporates all of the existing case law interpreting that phrase.

¶ 28    Emmett's interpretation of subsection (a-5) completely ignores the language "unable to attend" in the earlier version of the statute and proffers no explanation for its omission in the amended version. By grouping "sick, absent, or unable to fulfill his or her duties" together in subsection (a-5), the legislature indicated that the inability to fulfill one's duties is of a kind with sickness and absence. See *People ex rel. Birkett v. City of Chicago*, 202 Ill. 2d 36, 48 (2002) ("when a statute provides a list that is not exclusive, *** the class of unarticulated things will be interpreted as those that are similar to the named things"). Subsection (a-5), consequently, is limited to situations where the state's attorney is physically unable to perform due to sickness, absence, or similar circumstances beyond her control.

¶ 29     Moreover, Emmett's interpretation would make subsection (a-10) superfluous. If subsection (a-5) applies to situations where the state's attorney "is interested in" a case, there would be no need to additionally account for situations where there is "an actual conflict of interest." Emmett acknowledges that his "is interested in" reading of subsection (a-5) would set a lower bar than the "actual conflict of interest" language in subsection (a-10), but offers no plausible explanation for why the legislature would write subsection (a-10) as a superfluous higher bar if subsection (a-5) already covers conflicts of interest.

¶ 30     As the State points out, the more narrow reading of subsection (a-5) is both more consistent with the plain language of the statute and avoids the redundancy that would result from Emmett's reading of "unable to fulfill" as including situations where the state's attorney is "interested in any cause or proceeding." The more narrow reading is also consistent with the explicit intent of the legislature to "make a change" to the statute to require "actual conflicts of interest."

¶ 31     Because Emmett makes no argument that the state's attorney is physically unable to fulfill her duties in this case due to sickness, absence, or otherwise, the circuit court did not err in denying the petition under subsection (a-5).

¶ 32     We note that Emmett's arguments related to subsection (a-5) rely primarily on *Lang* for the proposition that "the appointment of a special prosecutor may *** be required if it is necessary to remove the appearance of impropriety in the prosecution of a defendant." *Lang*, 346 Ill. App. 3d at 682. He contends that there is such a pronounced appearance of impropriety when the state's attorney investigates and prosecutes police-involved shootings that she is, for the purposes of the statute, "unable to perform her duties." He bolsters this claim by pointing to a litany of police-involved shootings that he claims were inadequately investigated and prosecuted

11

by Foxx's predecessor in office. These widely reported cases, he argues, undermine the public's perception of the state's attorney and her ability to fairly and impartially investigate and prosecute police misconduct.

¶ 33    However, *Lang*'s holding was ultimately based on the language "is interested in any cause or proceeding" in the preamendment version of the Counties Code. *Id.* at 681. Because subsection (a-5) of the current statute applies to physical or other inability, rather than to conflicts of interest, *Lang* and its progeny are only applicable, if at all, to subsection (a-10).

¶ 34                                B. Subsection (a-10)

¶ 35    In *Lang*, after a hearing related to the defendant's allegedly driving with a revoked license, an assistant state's attorney followed the defendant out of court, hid behind some potted plants, surreptitiously watched him drive away from the courthouse, and contacted police to inform them that the defendant was driving without a license. *Id.* at 678-79. The assistant state's attorney then prosecuted the case until trial, when another attorney from the Lake County State's Attorney's Office prosecuted the case. *Id.* at 679. The assistant state's attorney who witnessed the alleged crime was the State's chief witness at trial. *Id.* On appeal, the Second District found that the State's prosecution of the defendant created an appearance of impropriety where the assistant state's attorney surreptitiously followed the defendant until he observed the defendant commit a crime, resulting in charges from the assistant state's attorney observations. *Id.* at 684. The reviewing court believed that "these facts created an improper appearance that the State was too involved with the underlying case to be fair in its prosecution of the defendant" and that "the State's Attorney's office was obsessed with finding evidence against the defendant to obtain a conviction against him at all costs." *Id.*

¶ 36    *Lang*, however, is not obviously controlling here. In the first place, the holding was ultimately based on the language "is interested in any cause or proceeding" in the pre-amendment version of the Counties Code. *Id.* at 681. That language does not appear in the amended version of the statute, so *Lang*'s continued applicability is questionable. In subsection (a-10), that language has been replaced with "the State's Attorney has an actual conflict of interest in the cause or proceeding." 55 ILCS 5/3-9008(a-10) (West 2016). The State argues that the insertion of the term "actual conflict of interests" forecloses the possibility of a special prosecutor being appointed where there is merely "the *appearance* of impropriety."

¶ 37    Additionally, although the *Lang* court held that "the appointment of a special prosecutor may also be required if it is necessary to remove the appearance of impropriety," the court relied on *People v. Courtney* and *Sommer*, two cases involving *actual* conflicts of interest. *Courtney* held that a *per se* conflict of interests existed where the newly appointed state's attorney had previously acted as defense counsel for the defendant. *People v. Courtney*, 288 Ill. App. 3d 1025, 1034 (1997). And in *Sommer*, the court held that a "clear conflicting interest" existed "where the Assistant State's Attorney was the complainant and key eyewitness." *Sommer*, 102 Ill. App. 3d at 120. So although the *Lang* court focused on the appearance of impropriety, it could just as easily have determined that the assistant state's attorney had an actual conflict of interest. As was the case in *Sommer*, the assistant state's attorney was both the complainant and principal witness, and therefore had a "clear conflicting interest." See *Id.*; see also *People v. Moretti*, 349 Ill. App. 67, 76 (1952) ("Courts have so often condemned lawyers for appearing as witnesses in a cause which they represent, that it was clearly the duty of the prosecutor to disqualify himself when it appeared to him that there was a prospect of his being a witness.").

¶ 38    Although Emmett points to a number of cases that have followed *Lang* in announcing that the appearance of impropriety may be sufficient to justify the appointment of a special prosecutor, the State counters that none of those cases actually found such a justification. See *People v. Max*, 2012 IL App (3d) 110385, ¶ 62 (finding no abuse of discretion in the trial court's decision not to appoint a special prosecutor even though the victim was the brother of the county sheriff and had made campaign contributions to the state's attorney); *People v. Weeks*, 2011 IL App (1st) 100395, ¶ 52 (holding no special prosecutor was required even though an assistant state's attorney was the complaining witness against defendant in an unrelated case); *People v. Bickerstaff*, 403 Ill. App. 3d 347, 354 (2010) (holding that the defendant failed to show that the state's attorney's public criticism of his predecessor's handling of the defendant's case warranted removal).

¶ 39    Indeed, *Lang*'s "appearance of impropriety" language appears to be at odds with our supreme court's interpretation of the very same language that appeared in the preamendment version of section 3-9008. In *Environmental Protection Agency v. Pollution Control Board*, 69 Ill. 2d 394 (1977), the Illinois Supreme Court analyzed the language " 'is interested in any cause or proceeding' " in section 3-9008's predecessor statute. *Id.* at 400 (quoting Ill. Rev. Stat. 1975, ch. 14, § 6). The relevant language at issue was identical to the language of the pre-amendment version of section 3-9008, and the supreme court held that to be "interested in a cause or proceeding," one must either be interested as a private individual or as an actual party to the proceedings. *Id.* at 400-01. The supreme court stated that these are the *only* two circumstances that allow for removal based on "interest." *Id.* Yet *Lang* purported to identify a third circumstance, namely, where continued participation would create an appearance of impropriety. The State argues persuasively that *Lang* cannot be read consistently with *Environmental*

*Protection Agency.* Where this court and the supreme court disagree, we must follow the lead of the supreme court. See *Agricultural Transportation Ass'n v. Carpentier*, 2 Ill. 2d 19, 27 (1953).

¶ 40    Furthermore, even if *Lang* remains good law in light of the statutory amendment, it is so factually dissimilar from this case that it offers Emmett no support. The conduct of the individual assistant state's attorney in *Lang* was both extreme and particularized. In that case, the assistant state's attorney secretly followed the defendant, hid behind potted plants, called the police, led the prosecution, and acted as the State's key witness. The *Lang* court observed that such behavior made it seem "that the State's Attorney's office was obsessed with finding evidence against the defendant to obtain a conviction against him at all costs." *Lang*, 346 Ill. App. 3d at 684. Here, on the other hand, Emmett's petition has relatively little to do with the way that the state's attorney investigated and decided not to pursue criminal charges in this particular case. In fact, neither the petition nor its exhibits describe any particular steps taken or not taken by State's Attorney Foxx in this case. Rather, his allegations regarding the conduct of the state's attorney are primarily grounded on the notion that the state's attorney is unable to fairly investigate and prosecute *any* case of police misconduct. While *Lang* dealt with an assistant state's attorney who became too personally invested in a particular case, Emmett's petion focuses on the previous state's attorney's decision not to bring charges in a number of unrelated cases. This case simply does not present the kind of "obsessive" behavior contemplated by the *Lang* court.

¶ 41    As for Emmett's other arguments related to subsection (a-10), he contends that there is an inherent conflict of interests any time the state's attorney is called upon to investigate and prosecute police-involved shootings. However, this court has already rejected that proposition. In *McCall v. Devine*, 334 Ill. App. 3d 192, 194 (2002), the petitioner sought appointment of a

special prosecutor to investigate and prosecute the shooting of her son by Chicago police. In her petition, she alleged that inconsistent accounts by the police established that there must be a cover-up about the circumstances of her son's death. *Id.* at 195. She also argued that a *per se* disqualifying bond existed between the state's attorney and the Chicago Police Department because " 'well over 90% of the criminal cases prosecuted by the Cook County State's Attorney's office have been investigated and brought to the Cook County State's Attorney's office by Chicago police officers.' " *Id.* We affirmed the trial court's dismissal of the case because the petitioner "failed to plead specific facts regarding the alleged relationship *** between [the state's attorney] and the Chicago police department which would make it improbable that [he] would conduct an unbiased investigation and prosecution in this case." *Id.* at 200-01. "To require McCall to plead and prove anything less than such specific facts would open the door to requiring a special prosecutor to be appointed any time a police officer is suspected of wrongdoing." *Id.* at 205-06.

¶ 42   Emmett attempts to distinguish *McCall* in two primary ways. In the first place, he argues that State's Attorney Foxx made certain campaign statements that establish the existence of a *per se* conflict of interests whenever the state's attorney is required to investigate police shootings. Secondly, he alleges his petition contained more specific facts than that in *McCall*. However, these attempts to distinguish the case are unavailing.

¶ 43   Emmett's petition included several quotations from Foxx before she was elected as Cook County state's attorney. He listed statements such as:

> "The question of bias is secondary to the bigger concern that there is a conflict of interest in having the [Cook County State's Attorney's Office] investigate and prosecute cases of police misconduct. *** The [Cook County state's attorney] cannot fulfill her official

responsibilities that she has been has been entrusted to fulfill by the People of Cook County to prosecute law enforcement ***."

Foxx also said, "there is an inherent intimacy between the State's Attorney [*sic*] office and the police department." Emmett quoted several such statements in his petition.

¶ 44    Emmett's position is that these statements, in and of themselves, are enough to establish the existence of an actual conflict of interest. He claims that the statements are binding admissions that the State has failed to rebut with its own evidence. The State argues that the statements are irrelevant because they were made before Foxx became the state's attorney and that, at any rate, the statements are not dispositive proof of an actual conflict of interest.[3]

¶ 45    As the State points out, Foxx's statements were made in the context of a political campaign, regarding the performance of her predecessor/political opponent. It is not at all clear that campaign statements made by a candidate for the office of state's attorney can be binding in any meaningful way after the election is over. See *Republican Party of Minnesota v. White*, 536 U.S. 765, 780 (2002) ("one would be naive not to recognize that campaign promises are—by long democratic tradition—the least binding form of human commitment"). Additionally, the circuit court had to evaluate the petition and its exhibits in the context of this particular case. *McCall*, 334 Ill. App. 3d at 205. Without reference to the rest of the facts of the case, the statements alone are insufficient to establish an actual conflict of interest.

¶ 46    Emmett claims that his petition pleaded unrebutted facts specific to the investigation of his son's shooting that show that there was an actual conflict of interest. In particular, he argues

---

[3]The State also argues that Foxx has subseqently disavowed her campaign statements. Emmett responds that the record does not contain any affidavit from the state's attorney or any other evidence that she has changed her mind on this issue. However, we need not address that particular argument because we find that Emmett did not meet his initial burden of showing that there was an actual conflict of interest, so the State never had the burden to rebut the claim.

that the previous state's attorney's "white paper" gave undue weight to Officer Sierra's account of the shooting. Additionally, he argues that the decision of the current state's attorney was based on the same reasoning as her predecessor. He contends that this shows that the state's attorney has essentially abandoned her obligation to conduct an unbiased investigation and evaluation of the case. However, neither Emmett's petition, nor the numerous exhibits to it, demonstrate any specific steps taken or not taken by State's Attorney Foxx in her review of the case. It appears that State's Attorney Foxx decided not to prosecute Officer Sierra based on the same reasoning as her predecessor—that, in light of the officer's assertion of self-defense, there is insufficient evidence to prove any offense beyond a reasonable doubt.

¶ 47     The circuit court was rightfully hesitant to second-guess the state's attorney's analysis of the facts and the decision not to file charges. As the court noted, "we all have to work within the confines of understanding that prosecutors, the state's attorney's office has discretion. They can decide when and when not to prosecute." In reviewing the petition and its numerous exhibits, the circuit court concluded that Emmett had not proven that the state's attorney's decision not to prosecute was anything "other than the reasonable exercise of that discretion." The standard for appointing a special prosecutor is not whether the court would have made a different decision in the state's attorney's place, but whether "the petitioner has proven by sufficient facts and evidence that the State's Attorney has an actual conflict of interest in a specific case." 55 ILCS 5/3-9008(a-10) (West 2016).

¶ 48     Whatever prosecutorial decisions we might have made if we were in the state's attorney's place, we cannot say that the circuit court abused its discretion in finding that Emmett failed to show by specific facts and evidence that the state's attorney has an actual conflict of interest in this specific case. See *McCall*, 334 Ill. App. 3d at 205 ("While McCall strongly argues that the

facts of this specific case (conflicting versions of the shooting) require the appointment of a special prosecutor, none of the facts pled relating to this shooting make the State's Attorney personally interested in this case."). As was the case in *McCall*, the true heart of Emmett's argument is not specific to the case at hand, but that a conflict of interest exists whenever the Cook County State's Attorney's Office investigates or prosecutes members of the Chicago Police Department because "the Chicago Police Department *** is vital to assisting in the prosecution of virtually all its cases."

¶ 49      As we noted in *McCall*, "[t]he majority of the cases addressing section 3-9008 arise out of disputes between governmental agencies that are both represented by the State's Attorney's office or criminal cases where a defendant who is already charged with an offense requests appointment of a special prosecutor to take over the pending case." *Id.* at 204. However, in a case such as this, "[a] request to appoint a special prosecutor for the purpose of investigating and possibly charging individuals with a criminal offense raises different concerns relating to the separation of powers doctrine." *Id.* at 204-05. The state's attorney is an elected official, "endowed with the exclusive discretion to decide which of several charges shall be brought, or whether to prosecute at all." *People v. Jamison*, 197 Ill. 2d 135, 161 (2001). To disqualify the state's attorney is to disenfranchise the electorate who voted for her. *McCall*, 334 Ill. App. 3d at 205. For that very reason, any such petitioner that seeks to do so must meet a very high burden. Emmett has not met that burden.

¶ 50                                        III. CONCLUSION

¶ 51      We find that the circuit court did not abuse its discretion in denying the Emmett's petition because he failed to establish that the state's attorney was "unable to fulfill her duties" under

19

subsection 3-9008(a-5) of the Counties Code, or that there was an "actual conflict of interests" under subsection 3-9008(a-10).

¶ 52    If the supreme court allows a petition for leave to appeal in this case, the clerk of this court shall certify the CD and transmit it to the clerk of the supreme court.

¶ 53    Affirmed.